William T. ARNOLD, Plaintiff–Appellant,

v.

COLORADO DEPARTMENT OF COR-
RECTIONS and Alexander M. Hunter,
in his official capacity as Boulder Coun-
ty District Attorney, Defendants–Appel-
lees.

No. 98CA0976.

Colorado Court of Appeals,
Div. I.

March 4, 1999.

Rehearing Denied April 8, 1999.

William T. Arnold, *Pro Se*

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul S. Sanzo, First Assistant Attorney General, Denver, Colorado, for Defendants–Appellees

Opinion by Judge CASEBOLT.

Defendant, William T. Arnold, appeals the trial court's summary denial of his Crim. P. 35(c) motion for post-conviction relief. We affirm in part, reverse in part, and remand for further proceedings.

Defendant was convicted of second degree burglary and was sentenced to a five-year term in the custody of the Department of Corrections (DOC). In March 1997, he was transferred from a DOC facility in Colorado to the Dickins County Correctional Center, a privately operated facility located in Texas that had contracted with Dickins County to house prisoners. In July 1997, he was transferred to the Karnes County Correctional Center, a privately operated Texas facility that had contracted with Karnes County to house prisoners. In November 1997, he was transferred to the Huerfano County Correctional Center, a privately operated facility in Colorado, where he is currently serving his sentence.

In a "Motion for writ of prohibition and request for issuance of contempt citations and order to show cause," filed in the trial court, defendant made a number of allegations. He asserted that he had been "arrested" by DOC officials and "extradited" to county correctional facilities in Texas without any formal extradition proceedings. He claimed that his transfers to and from the Texas county correctional facilities had not been made pursuant to the Interstate Corrections Compact (ICC), § 24–60–1601, et seq., C.R.S.1998; therefore, he was effectively released from DOC's custody and given an implied pardon or commutation of his sentence, which resulted in a loss of jurisdiction over him. He also asserted that the statutory authority of the DOC Executive Director to contract with other jurisdictions for the confinement of offenders does not include the authority to contract with political subdivi-

sions of other states, and that the contract between the Executive Director and Karnes County, Texas, was invalid such that his confinement pursuant thereto was improper.

In response, the DOC asserted that the transfers were validly made pursuant to the ICC, that defendant had not been pardoned, and that, therefore, Colorado retained its jurisdiction over him.

The trial court treated defendant's motion as a Crim. P. 35(c) motion for post-conviction relief. After finding that defendant had been moved from a Colorado prison to penal institutions in Texas under the ICC, the trial court summarily denied his motion. This appeal followed.

After the appeal was docketed here, we requested the supreme court to accept habeas corpus jurisdiction under § 13–45–101, C.R.S.1998. It declined to do so. Hence, we will treat defendant's motion as being made under Crim. P. 35(c).

## I.

Defendant contends the trial court erred in finding that he was transferred to the Texas county correctional facilities pursuant to the ICC, § 24–60–1601, et seq., C.R.S.1998. He asserts that, absent such a transfer, Colorado lost jurisdiction over him. We agree that the trial court incorrectly concluded that the transfer was made pursuant to the ICC; however, we reject the contention that Colorado lost jurisdiction over defendant.

The trial court found that defendant was transferred to the Texas county correctional facilities pursuant to the ICC. However, there is no evidence in the record to support that finding. Instead, the trial court's determination was predicated only upon DOC's argument that such had occurred, without any proof. Furthermore, the ICC relates to agreements between states, not to agreements between a state and a county in another state.

■ In support of the judgment before us, however, DOC asserts that defendant's transfers were made under contracts negotiated between the Executive Director and the Texas counties pursuant to § 17–1–105(1)(f), C.R.S.1998. Those counties, in turn, had contracted with private parties for the housing of prisoners. Defendant argues here, as he did in the trial court, that the Executive Director does not have authority under that statute to enter into such contracts with political subdivisions of other states. We conclude to the contrary.

Section 17–1–105(1)(f), C.R.S.1998, gives the Executive Director of the DOC the authority to:

> enter into contracts and agreements *with other jurisdictions, including other states, the federal government, and political subdivisions of this state,* for the confinement and maintenance of offenders sentenced to imprisonment by the courts of this state and the authority to reimburse such jurisdictions for the expenses incurred by such jurisdictions in the confinement and maintenance of said offender.

(emphasis added)

Defendant contends the statute limits the Executive Director's authority to contracting with other states, the federal government, and political subdivisions of the state of Colorado. Therefore, he argues, the Executive Director has no authority to enter into contracts with political subdivisions of other states. We are not persuaded.

■ The interpretation of a statute presents a question of law. Our primary task in construing a statute is to give effect to the intent of the General Assembly by looking first at the language of the statute. *See People v. Terry,* 791 P.2d 374 (Colo.1990).

■ Statutes should be interpreted so that no clause, sentence, or word is rendered superfluous, contradictory, or insignificant. *Wilson v. People,* 747 P.2d 638 (Colo.1987).

Defendant's interpretation of the statute renders the word "including" superfluous by limiting the term "other jurisdictions" only to those jurisdictions expressly listed. However, the word 'include' is ordinarily used as a word of extension or enlargement and is not definitionally equivalent to the word "mean." *Graven v. Vail Associates, Inc.,* 909 P.2d 514 (Colo.1995); *People v. Pipkin,* 762 P.2d 736 (Colo.App.1988).

By use of the word "including," the General Assembly intended that "other states, the federal government and political subdivisions of this state" are examples of "other jurisdictions" with whom the Executive Director may contract, and are not limitations on that contracting authority. *See Graven v. Vail Associates, Inc., supra* ; *People v. Pearson,* 190 Colo. 313, 546 P.2d 1259 (1976). Had the General Assembly wished to so limit the Executive Director's contracting authority, it could have omitted "including" and specified "other jurisdictions" as meaning only "other states, the federal government, and political subdivisions of this state." *See* § 17–1–105(1)(f), C.R.S.1998; *People v. Owens,* 670 P.2d 1233 (Colo.1983).

■ We hold that "other jurisdictions," as defined in § 17–1–105(1)(f), C.R.S.1998, includes political subdivisions of other states. Hence, the Executive Director had authority to enter into contracts with counties of other states.

## II.

■ Defendant contends that neither Karnes County nor Dickins County had the authority under Texas law to enter into contracts with the Executive Director for the confinement of inmates convicted of Colorado offenses. We disagree.

Tex. Admin. Code tit. 37, § 297.14 (1998) provides in pertinent part:

(a) The only entities, other than the state, that are authorized to operate a correctional facility to house in this state, inmates convicted of offenses against the laws of another state of the United States are: (1) a county or municipality; and (2) a private vendor operating a correctional facility under a contract with a county. . . .

(b) A private vendor operating a correctional facility in this state may not enter into a contract for housing out-of-state inmates. *A county commissioners court or the governing body of a municipality may enter into a contract with another state or a jurisdiction in another state for housing out-of-state inmates.*

(emphasis added)

Therefore, both Karnes and Dickins counties had the authority to enter into contracts with the Executive Director for the confinement of inmates convicted of Colorado offenses.

Here, the only agreement in the record is one between the Executive Director and Karnes county, and it is signed by the county commissioners court of that county. Accordingly, it is a permissible agreement under Texas law.

Because the record does not contain the Dickins county agreement, we decline to address any other contention concerning it.

## III.

■ Defendant next contends that, because the contract between the Executive Director and Karnes County was invalid, his confinement pursuant thereto was improper. Because the trial court summarily denied his motion without making any findings, we are unable effectively to review his contention. Therefore, a remand is necessary.

■ A Crim. P. 35(c) motion may be summarily denied if the motion, the files, and the record clearly establish that the allegations presented are without merit and do not warrant post-conviction relief, the motion and the record present only issues of law, or the motion fails to assert facts that, if true, would support a constitutional claim. *See People v. Rodriguez,* 914 P.2d 230 (Colo.1996).

Here, defendant provided numerous documents to the trial court in connection with his motion. The DOC, in contrast, provided no evidence to support its response. Included in the documents provided by defendant was a copy of a partially executed contract between the Executive Director and Karnes County for the confinement of DOC offenders.

Defendant asserts here, as he did in the trial court, that the contract is only partially executed because it does not contain the approval of the Controller of the State of Colorado. He points to express contractual language providing that the contract "shall not be deemed valid until it shall have been approved by the Controller of the State of

Colorado or such assistant as he may designate."

The existence of a contract is a question of fact to be determined by the trier of fact in the first instance. *In re Marriage of O'Brien*, 759 P.2d 826 (Colo.App.1988). Because defendant's motion presented a question of fact that could not solely be resolved based on the documents, it was error for the trial court summarily to deny it with respect to that issue. *See People v. Rodriguez, supra; see also People v. H.J.*, 931 P.2d 1177 (Colo.1997) (where trial court fails to make appropriate factual findings, appellate review is hindered).

Given our conclusion that both the Executive Director and Texas counties have the authority to enter into such contracts for the confinement of offenders sentenced in Colorado, we must remand for a determination of whether a valid contract existed between the Executive Director and Karnes county at the time of defendant's transfer. In the event the trial court determines that the contract is invalid, it should then consider the remedy, if any, to which defendant may be entitled.

## IV.

Defendant next contends that, because the Karnes County contract cites the wrong statutory subsection as the source of the Executive Director's contracting authority, it is invalid. We disagree.

As stated above, the Executive Director has the statutory authority pursuant to § 17-1-105(1)(f), C.R.S.1998, to enter into such a contract. We may not interfere with the performance of that statutory duty, *see Kort v. Hufnagel*, 729 P.2d 370 (Colo.1986), notwithstanding that the contract cites a different statutory subsection as the Executive Director's source of authority.

## V.

We reject defendant's remaining assertions because he has failed to carry his burden to establish the allegations.

In a Crim. P. 35(c) proceeding, the legality of the judgment is presumed, and the burden is on the defendant to establish by a preponderance of the evidence the allegations of his motion. When the evidence before the trial court amply supports its findings and holdings, its judgment will not be disturbed on review. *Kailey v. Colorado State Department of Corrections*, 807 P.2d 563 (Colo.1991).

First, there is nothing in defendant's motion, the file, or the record, which supports his allegation that he was "arrested" and "extradited" by DOC officials in the "absence of any formal extradition procedures." Defendant points to two affidavits of the Executive Director, submitted in connection with two unrelated cases, attesting to the transfer of two other inmates to Texas county correctional facilities. Defendant, however, misconstrues those affidavits.

The Executive Director did not attest that those transfers were arrests. Rather, he simply attested that those inmates were "properly arrested pursuant to Colorado convictions" in support of his assertion that the State of Colorado had not waived its jurisdiction over those inmates.

There is simply no evidence, such as charges pending against defendant in Texas, that would support his allegation of improper extradition. Therefore, we will not disturb the trial court's finding that defendant was transferred, rather than arrested and extradited, from a DOC facility to the Texas county correctional facilities. *See Kailey v. Colorado State Department of Corrections*i.

It follows, therefore, contrary to defendant's contention, that neither the Interstate Agreement on Detainers Act, § 24–60–501, et seq., C.R.S.1998, nor the Uniform Mandatory Disposition of Detainers Act, § 16–14–101, et seq., C.R.S.1998, is applicable here.

Second, we reject defendant's allegation that the ICC, pursuant to the Supremacy Clause, preempts any state law or contract that regulates the interstate transfer of prisoners. Such contention is directly contrary to the express language of the ICC itself.

Article IX of the ICC, § 24–60–1602, C.R.S.1998, provides that:

Nothing contained in this compact shall be construed to abrogate or impair any agreement or other arrangement which a party state may have with a non-party state for the confinement, rehabilitation or treatment of inmates nor to repeal any other laws of a party state authorizing the making of cooperative institutional arrangements.

■ Third, we are not aware of any authority to support defendant's claim that, because his transfers were not made pursuant to the ICC, he was released from the custody of DOC and therefore received an implied pardon or commutation of his sentence.

The cases cited by defendant to support his contention involve prisoners who had been deliberately released from custody by a jurisdiction that later attempted to re-establish custody. *See, e.g., Shields v. Beto,* 370 F.2d 1003 (5th Cir.1967) (Texas was barred, based on waiver, from re-asserting custody over prisoner after voluntarily surrendering him to Louisiana authorities and making no effort to re-establish custody for 28 years).

Here, there is nothing in defendant's motion, the file, or the record showing that Colorado deliberately released him from custody and is now, much later, attempting to regain it. Therefore, those cases are clearly distinguishable and do not apply here.

We have considered, and reject, defendant's remaining contentions.

That part of the order summarily denying defendant's motion directed to the validity of the Karnes county contract with the Executive Director is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion. The balance of the order is affirmed.

METZGER and TAUBMAN, JJ., concur.