Richard J. GOFF, Petitioner,

v.

The PEOPLE of the State Of
Colorado, Respondent.

No. 00PDJ023.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Aug. 4, 2000.

Opinion by Presiding Disciplinary Judge ROGER L. KEITHLEY, FRANCES L. WINSTON, a representative of the public, and LAIRD T. MILBURN, a member of the bar.

## OPINION AND ORDER DENYING REINSTATEMENT

*Attorney Reinstatement Denied*

This reinstatement hearing was heard on May 17 and 18, 2000, pursuant to C.R.C.P. 251.29(b) and (c) before the Presiding Disciplinary Judge ("PDJ") and two hearing board members, Frances L. Winston and Laird T. Milburn. Nancy L. Cohen, Deputy Regulation Counsel, represented the People of the State of Colorado (the "People"). Philipp C. Theune represented petitioner Richard James Goff ("Goff"). The following witnesses testified on behalf of Goff: Dr. Frank T. Timmons, David N. Bolocofsky, Michael J. Grills, Roslyn Cohen, Cathy Ferin, Cleveland Holmes, Lois Leder, Norbert A. Tanguay, Daniel A. Brittsan and Dr. Jonathan T. Ritvo. Richard J. Goff testified on his own behalf. James Henderson, Gregory Rawlings, Joseph Q. Lynch, David Smith, Sonya Chandler (by video deposition), Rita Loseke, Judge John Leopold and Janet Corley testified on behalf of the People. Joint Exhibits 1 though 12 were admitted by stipulation. Respondent offered and the PDJ admitted Exhibit 13 into evidence as a sanction for the People's late disclosure of relevant information. The People's Exhibits A and B were also admitted.

In pre-trial proceedings, the PDJ ruled that character and fitness to practice law are issues to be resolved in reinstatement proceedings pursuant to C.R.C.P. 251.29(b), and allowed the admission into evidence of matters currently under investigation by the Office of Attorney Regulation Counsel. The PDJ ordered that the evidence presented regarding the Sonya Chandler and Michael Bonghi matters could be considered by the Hearing Board only for purposes relating to Goff's character and fitness to practice law and could not be considered to establish independent violations of The Rules of Professional Conduct. At trial, the PDJ informed

the hearing board of the evidentiary limitation relating to evidence bearing upon the Chandler and Bonghi matters.

The PDJ and Hearing Board considered the testimony and exhibits admitted, assessed the credibility of the witnesses, and made the following findings of fact which were established by clear and convincing evidence:

## I. FINDINGS OF FACT

Goff has taken the oath of admission and was admitted to the bar of this court on May 16, 1990 and is registered as an attorney upon the official records of this court, attorney registration no. 19348. He is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

Richard J. Goff was suspended from the practice of law effective October 11, 1999 by Order of the PDJ. The Order approved a Stipulation and Agreement Containing the Respondent's Conditional Admission of Misconduct ("Conditional Admission"), pursuant to which the People and Goff agreed to a six month suspension with conditions. One of the express conditions was the requirement that Goff undergo a reinstatement proceeding. In addition, Goff was ordered to pay the costs of the disciplinary proceeding. Goff paid the costs of the disciplinary proceeding in a timely fashion.

Goff gave notice to his clients of his suspension in accordance with C.R.C.P. 251.28(b),[1] notice to opposing parties in litigation pursuant to C.R.C.P. 251.28(c) and filed the requisite affidavit under C.R.C.P. 251.28(d). Additional Requests for Investigation were received by the Office of Attorney Regulation Counsel subsequent to the effective date of the Order suspending Goff from the practice of law. As required by C.R.C.P. 251.10(a), Goff has filed a written response to each Request for Investigation.

Goff's suspension arose from three separate matters. In the Conditional Admission approved by the PDJ, Goff admitted that in June 1994 he filed a civil suit on behalf of his client, Anthony Ciocchetti. The suit alleged the defendant engaged in a sexual relationship with Ciocchetti while acting as his marriage counselor. In January 1996, following nearly eighteen months of litigation and two motions for summary judgment, the trial court entered judgment in favor of the defendant, granted the defendant's motion for sanctions and ordered Goff and his client, jointly and severally, to pay the sum of $22,381.76 for "knowing that [all] claim[s] contained in the complaint against [the defendant] ... lacked substantial justification, were imposed for delay and harassment, were unnecessarily expanded by their improper conduct ... and that there at no time existed any factual support for any of [the] claims, all of which were prosecuted by and through Goff with full knowledge of the above." Goff eventually satisfied the sanctions judgment. Goff's misconduct violated Colo. RPC 3.1(a lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous), Colo. RPC 8.4(d)(conduct prejudicial to the administration of justice) and Colo. RPC 8.4(a)(violating a rule of professional conduct).

In the second matter, a 1997 domestic relations case, Goff violated Colo. RPC 8.4(d)(prejudice to the administration of justice) by advising his client to ignore a court order requiring that the client immediately list the marital property for sale and advising him not to cooperate in the listing of the property.

In the third matter, Goff was appointed in 1995 to represent Cory Morrison, a defendant in a criminal action accused of sexual assault on two children. Goff admitted that he failed to interview witnesses prior to trial, failed to utilize an expert to rebut the prosecution's expert, failed to present testimony of which he was aware challenging the reliability of the complaining witnesses, failed to pursue records relating to the complaining witnesses which may have assisted in the

---

1. Evidence introduced at the reinstatement hearing indicated that Goff may have initially overlooked notifying one client of his suspension but promptly corrected the error. Such conduct meets the substantial compliance test adopted in *McCaffrey v. People*, 35 P.3d 481, 482 (Colo. PDJ 2000), 29 Colo. Law 109 (May 2000).

defense of the charges, failed to discover the prosecution's expert witness opinions prior to trial, and failed to enlist the assistance of experienced co-counsel notwithstanding his lack of experience in defending similar charges. Goff's client was convicted and sentenced to two consecutive sixteen-year terms of imprisonment. Goff stipulated that his conduct violated Colo. RPC 1.1(competent representation).

The Conditional Admission which resulted in Goff's six month suspension also set forth the prior discipline imposed upon him for previous misconduct.[2] Joint Exhibit 7 includes Goff's prior discipline. In March 1994, Goff received two letters of admonition. The first recites that Goff contacted individuals he knew to be represented by counsel and threatened them with contempt of court and imprisonment in connection with a domestic relations case. The letter of admonition found that Goff's conduct reflected adversely upon his fitness to practice law. The second 1994 letter of admonition, also concerning a domestic relations case, recites that Goff became threatening, improper and unprofessional in his dealings with his client. In addition, the letter of admonition recites that Goff phoned his client's mother and threatened to shred her in little pieces if she did not stop talking about Goff at the office where she worked. Again, the letter of admonition found that Goff's conduct reflected adversely upon his fitness to practice law.

In January 1996, Goff received two more letters of admonition. The first recites that Goff knowingly allowed another attorney to prepare pleadings for use in the Bankruptcy Court notwithstanding a prior court order precluding the same attorney from appearing in that court on behalf of that client. The second recites that Goff signed motions prepared by other counsel without becoming familiar with the relevance of such motions and attempted to argue the motions without the ability to do so. Both 1996 letters of admonition included findings that the misconduct was prejudicial to the administration of justice.

In September 1997, Goff received a private censure from the Supreme Court in connection with a paternity matter involving the client's son. An oral motion made by Goff during a temporary orders hearing was denied because it was not in writing. Goff failed to submit a written motion following the denial, was discharged by his client, and, notwithstanding his knowledge of his client's current address, mailed the client's copy of his motion to withdraw to an old address. The Supreme Court found that Goff's conduct was prejudicial to the administration of justice and that he failed to protect his client's interests following termination, in violation of Colo. RPC 8.4(d) and Colo. RPC 1.16. The 1997 private censure also found that at the time Goff engaged in the misconduct, he was suffering from suicidal depression, had initiated treatment and, as a consequence, declined to impose more severe discipline in light of Goff's prior disciplinary record. The Supreme Court, however, did impose conditions upon Goff's continued practice of law designed to insure that he remained in treatment for his depression for at least two years.

The Conditional Admission which resulted in this reinstatement proceeding required that Goff attend the ethics course offered by the Office of Attorney Regulation Counsel and imposed various safeguards within his law office prior to the submission of the Petition for Reinstatement. In part, it required that a practice monitor having at least ten years' experience review Goff's legal files and method of handling his case load following his reinstatement. The review procedure specified in the Conditional Admission and in the PDJ's Order required Goff's demonstration of a workable reminder or "tickler" system, meetings for case load review at specified intervals which necessitated Goff's preparation of lists of current active files, the monitor's review of the files, the monitor's making suggestions necessary to assure that the case load was being properly and professionally handled, and determi-

---

**2.** C.R.C.P. 251.29(e) requires the reinstatement board to consider the petitioner's entire disci-   plinary record.

nations by the monitor that Goff was progressing in a satisfactory manner.

In an effort to satisfy these prophylactic provisions, Goff hired Phillip Theune, an attorney licensed in Colorado with extensive legal and firm management experience, as the managing attorney for Richard J. Goff, P.C. Mr. Theune is responsible for all hiring and firing decisions for the firm. Mr. Theune, in turn, hired another lawyer who has over ten years' experience in the criminal law field to handle cases for the firm. The firm implemented policies and procedures requiring the approval of two lawyers before accepting any case. A formal procedure manual is currently under consideration. Since Goff's suspension, the firm has developed a centralized calendaring system, has created a system of checklists to be followed in cases, has implemented a centralized file storage system, now requires that attorneys invest more time and effort before taking cases, and has instituted policies requiring all attorneys to keep track of their time on all cases.

During the period of suspension, Goff worked as a paralegal with the other lawyers in the firm and performed research and drafting under their supervision. Goff attended and passed the ethics course offered by the Office of Attorney Regulation Counsel. Goff, however, took no continuing legal education courses during the period of suspension; he testified that he could not bring himself to do so. Apart from the ethics course, no evidence was presented at the reinstatement hearing suggesting that Goff undertook any efforts from 1994 to the date of the hearing to enhance his competency in any area of the law.[3] During the period of suspension, Goff was not convicted of any crime and was not subject to any civil judgments.

Goff was, however, involved in at least two civil disputes involving litigation arising out of events pre-dating his suspension but continuing during the suspension. One of those civil disputes is relevant to this reinstatement case. That matter concerned a fee dispute with Goff's former client, Michael Bonghi. Goff admitted that notwithstanding a court order requiring arbitration of the dispute, the arbitration was delayed by his failure to supply a Consent to Arbitration necessary for the arbitration to proceed. Goff justified the failure to supply the required documentation by deflecting responsibility for compliance with the court order to Mr. Theune, his counsel and firm managing attorney.[4] The disagreement was in fact between Richard J. Goff, P.C. and Goff's former client. Goff was the sole shareholder of the firm and signed the original fee agreement with the client which contained a mandatory arbitration clause. During the relevant time period was involved in firm administration, and, indeed, engaged in discussions with Mr. Theune regarding arbitration of the dispute.[5]

Goff's treating therapist and an independent medical evaluator presented medical testimony that Goff currently suffers from and receives treatment for depression. The level of his depression has ranged from mild to suicidal. Both because of the private censure imposed against him in 1997 and his recognition of his depression, Goff has remained in therapy and continues to take medication. Shortly after his suspension in 1999, Goff once again suffered from suicidal depressive episodes. Both medical professionals agreed that Goff's conduct was not the result of his medical condition, although both admit that the condition may have played a minor role in his conduct. Goff's condition is neither pervasive nor inflexible: Goff has the ability to conform his conduct to the standards of his profession and he recog-

---

**3.** Although C.R.C.P. 260.2 requires all attorneys registered in Colorado, with some exceptions not applicable here, to complete forty-five hours of Continuing Legal Education every three years, no evidence was offered at the reinstatement hearing bearing upon the type, scope, topic or amount of continuing legal education courses Goff may have taken in the past.

**4.** This dispute and the evidence relating to it was considered by the PDJ and Hearing Board only as to character, a factor to be considered in assessing rehabilitation, and as to Goff's fitness to practice law in accordance with the PDJ's earlier ruling in pre-trial proceedings.

**5.** During the pendency of the reinstatement petition, Goff paid Bonghi the sums Bonghi claimed he was owed.

nizes that his conduct has not been in accord with those standards. Both medical professionals opined that with additional education and close supervision, Goff could conform his conduct to that required of attorneys. The medical professionals expressed reservations that Goff may rebuff monitoring of his practice or that the imposed monitoring conditions contained in the Conditional Admission are insufficient. Goff's treating therapist acknowledged that Goff recognizes imposed limitations but that he has difficulty agreeing to or complying with those limitations. Both medical professionals opined that there is no medical or psychological reason Goff cannot conform his conduct to the requirements of the profession.

The People presented evidence relating to Goff's court appointment to represent Sonya Chandler in 1995.[6] Chandler was charged with child abuse resulting in death. The prosecution identified two experts in that case prior to trial. At least one was a pathologist designated to express opinions on the manner and cause of death. Goff did not interview either expert prior to trial nor did he consult with or retain a defense pathologist to rebut the anticipated testimony. During the course of the pre-trial preparations, the trial judge became sufficiently concerned about Goff's lack of motion practice to summon him and the prosecutor to court to discuss the importance of pre-trial motion proceedings. Following the judge's conference, Goff obtained copies of motions filed by counsel for a co-defendant, copied or paraphrased the motions and filed them with the court on behalf of his client. Goff, with one exception, failed to follow through on the motions. Goff's file in the case lacked notes of interviews with his client, contained few witness statements and reflected no effort to obtain experts to rebut those designated by

the prosecution. Goff admitted to successor counsel that he did not interview the prosecution witnesses prior to trial. Goff's file, however, contained extensive notes referring to delays in receiving compensation for his services. Goff's client was convicted and sentenced to a term of incarceration. Successor counsel was obtained to proceed with a Crim. P. 35(c) motion based upon ineffective assistance of counsel. Although the trial court hearing the Crim. P. 35(c) motion ruled that Goff's conduct would not have altered the eventual outcome of the trial and, therefore, denied relief, the court did find that Goff's failure to consult with a pathologist was substandard and deficient performance by an attorney.[7]

Goff became an attorney at age forty-two following a career as an engineer. After graduating in the upper portion of his law school class and passing the bar, Goff became a solo practitioner. He received no mentoring and learned to practice law by picking up experience in county court cases and observing other attorneys. Goff is committed to his family and his faith, and is passionate about the law including the prospect of assisting those in need of legal services. Goff freely acknowledged that he frequently allows his passion for his client's cause to impede the exercise of rational judgment.

Goff testified regarding each instance of prior discipline. In addressing the three instances of misconduct to which he admitted in the Conditional Admission, Goff minimized his misconduct, attributed his misconduct to the actions of others, explained his misconduct as stemming from his passion for his client's cause and acknowledged that even after being advised to alter his course of conduct by those he respected he continued to engage in the improper conduct.

---

6. This evidence, like the evidence relating to the Bonghi matter, was considered by the PDJ and Hearing Board as relevant only to Goff's character and fitness to practice law.

7. The standard of proof in a Crim. P. 35(c) proceeding is upon the defendant and is by a preponderance of the evidence. *Arnold v. Colorado Department of Corrections*, 978 P.2d 149, 153 (Colo.App.1999). Relief under Crim.P. 35(c) requires both a finding of substandard attorney performance and a determination that the sub-

standard performance was of a sufficient degree to affect the outcome of the criminal proceeding. *See People v. Norman*, 703 P.2d 1261, 1272 (Colo.1985)(*citing Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).) In this reinstatement proceeding the standard of proof is on Goff to establish by clear and convincing evidence that he has the requisite character to practice law and is fit to do so. Of necessity, fitness incorporates competency.

## II.  CONCLUSIONS OF LAW

Initiation of the reinstatement process begins with the submission of a Verified Petition for Reinstatement.  C.R.C.P. 251.29(c) requires that the attorney's Petition for Reinstatement set forth, in part:

(3) The facts other than passage of time and absence of additional misconduct upon which the petitioning attorney relies to establish that the attorney possesses all of the qualifications required of applicants for admission to the Bar of Colorado, fully considering the previous disciplinary action taken against the attorney;[8]

(4) Evidence of compliance with all applicable disciplinary orders and with all provisions of this Chapter regarding actions required of suspended attorneys;

(5) Evidence of efforts to maintain professional competence through continuing legal education or otherwise during the period of suspension.

The attorney seeking reinstatement must establish the three elements set forth in the rule by clear and convincing evidence.  *See* C.R.C.P. 251.29(d).  A petitioning attorney's failure to satisfy the standard of proof has dire consequences:  the attorney who is unable to meet the requisite burden of proof may not reapply for reinstatement for a period of two years following the denial of a previous petition.  *See* C.R.C.P. 251.29(g).

C.R.C.P. 251.29(b) sets forth the test which must be met during a reinstatement proceeding in order to authorize reinstatement to the practice of law.  It provides, in relevant part:

An attorney who has been suspended ... must file a petition with the Presiding Disciplinary Judge for reinstatement and must prove by clear and convincing evidence that the attorney has been rehabilitated, has complied with all applicable disciplinary orders and with all provisions of this chapter, and is fit to practice law.[9]

Thus, an attorney who has been suspended from the practice of law must bear the burden of proving that he or she is:  (1) rehabilitated;  (2) has complied with all applicable disciplinary orders and all provisions of the Colorado Rules of Civil Procedure relating to attorney discipline regarding actions required of suspended attorneys, and (3) is fit to practice law.  All three of the elements of proof must be established before reinstatement may be authorized.[10]

*People v. Klein,* 756 P.2d 1013, 1016 (Colo.1988) interprets the language of the prior reinstatement rule, C.R.C.P. 241.22, and sets forth criteria which must be considered in reinstatement proceedings in order to evaluate an attorney's rehabilitation.  *Klein* requires:

[A]ny determination of that issue [rehabilitation] must include consideration of numerous factors bearing on the respondent's state of mind and ability, such as character, conduct since the imposition of the original discipline, professional competence, candor and sincerity, recommendations of other witnesses, present business pursuits of the respondent, the personal and community service aspects of the respondent's life, and the respondent's recognition of the seriousness of his previous misconduct.

However, that decision does not define—except by example—what constitutes rehabilitation.

Rehabilitation for purposes of attorney reinstatement and readmission to the bar has been defined as "the reestablishment of the reputation of a person by his or her restoration to a useful and constructive place in society."  Avrom Robin, *Character and Fitness Requirements for Bar Admission in New York,* 13 Touro L.Rev. 569, 583 (1997)(*quoting In re Cason,* 249 Ga. 806, 294

---

8.  This subsection incorporates the concept that neither the passage of time nor the absence of additional misconduct, by themselves, is sufficient to establish rehabilitation.

9.  Reinstatement proceedings are conducted before a hearing board as required by C.R.C.P. 251.29(d).

10.  The PDJ and Hearing Board concluded that Goff did establish by clear and convincing evidence that he had complied with all disciplinary orders and all provisions of the Colorado Rules of Civil Procedure relating to attorney discipline regarding actions required of suspended attorneys.

S.E.2d 520, 522–23 (1982)). Other factors which are considered are the applicant's age at the time of the offense and the likelihood that the applicant will repeat the behavior in the future. *Id.* Courts, including those in Colorado, focus upon the applicant's current mental state. *Id., See Klein,* 756 P.2d at 1016.

Rehabilitation has also been defined as the regeneration of an erring attorney. Miriam D. Gibson, *Proving Rehabilitation,* 20 J. LEGAL PROF. 239, 239 (1996)(*quoting In re Cantrell,* 785 P.2d 312, 313 (Okla.1989)). Regeneration denotes an overwhelming change in the applicant's state of mind. *Id.* An erring attorney who seeks readmission [or reinstatement] bears a heavy burden of proof, for he must show by the most clear and convincing evidence that efforts toward rehabilitation have been successful. *Id.* Because rehabilitation begins with a change in the applicant's way of thinking, there are no certain or unmistakable outward signs which evidence rehabilitation. *Id.* Nevertheless, courts have identified criteria which are probative of rehabilitation.*Id.* [11]

"[R]einstatement will not automatically be granted on evidence that the Applicant has engaged in only proper conduct, even where no contrary evidence is present-ed." *In re Sharpe,* 499 P.2d 406, 409 (Okla. 1972). In determining whether an attorney may be reinstated to practice law, foremost consideration must be given to protecting public welfare. *Cantrell,* 785 P.2d at 313. Each case for reinstatement must be reviewed on its own merits. *Id.* at 313. Each case will fail or succeed on the evidence presented and the circumstances peculiar to that particular case. *Id.*

It is fundamental to the reinstatement decision that the reinstatement board determine that rehabilitation has already occurred. C.R.C.P. 251.29(b) specifically provides that the petitioner prove that "the attorney *has been rehabilitated* " (emphasis added). Mere proof that measures have been undertaken which, if successful, may result in rehabilitation is insufficient. Although an order allowing reinstatement may include conditions which must be followed by the reinstated attorney, it is a prerequisite to any such order that the attorney has already been successfully rehabilitated. *See* C.R.C.P. 251.29(b).[12] Proof of anticipated changes in conduct or working environment do not satisfy the requirement of C.R.C.P. 251.29(b).

Imposition of discipline against an attorney includes a determination that some professional or personal shortcoming existed

---

11. The Rule Regulating The Florida Bar 3–13 sets forth specific elements of rehabilitation that the attorney must establish:

Any applicant or registrant who affirmatively asserts rehabilitation from prior conduct which bears adversely upon such person's character and fitness for admission to the Bar shall be required to produce clear and convincing evidence of such rehabilitation including, but not limited to, the following elements:

(a) strict compliance with the specific conditions of any disciplinary, judicial, administrative or other order, where applicable;

(b) Unimpeachable character and moral standing in the community;

(c) good reputation for professional ability, where applicable;

(d) lack of malice and ill feeling toward those who by duty were compelled to bring about the disciplinary, judicial, administrative or other proceeding;

(e) personal assurances, supported by corroborating evidence, of a desire and intention to conduct one's self in an exemplary fashion in the future;

(f) restitution of funds or property, where applicable;

(g) positive action showing rehabilitation by such things as a person's occupation, religion, or community or civil service. Merely showing that an individual is now living and doing those things he or she should have done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society. The requirement of positive action is appropriate for applicants for admission to the Bar because service to one's community is an implied obligation of members of the Bar.

12. Disciplinary orders arising from Conditional Admissions requiring reinstatement proceedings frequently contain conditions with which the disciplined attorney must comply prior to petitioning for reinstatement or which he or she has agreed may be imposed upon reinstatement. Such conditions, even when satisfied, do not necessarily establish rehabilitation.

upon which the discipline is premised. The shortcoming may have resulted either from personal deficits or from a combination of personal deficits and professional and/or environmental inadequacies. It necessarily follows that the analysis of rehabilitation should be directed at the professional or moral shortcoming which resulted in the discipline imposed. *See* C.R.C.P. 251.29(c)(5); *Tardiff v. State Bar*, 27 Cal.3d 395, 165 Cal.Rptr. 829, 612 P.2d 919, 923 (1980)(*citing Roth v. State Bar*, 40 Cal.2d 307, 253 P.2d 969, 972 (1953)(holding that in an application for reinstatement ... the proof presented must be sufficient to overcome the court's former adverse judgment of [the] applicant's character)). *But see* C.R.C.P. 251.29(e). The evidence in this case established that Goff's suspension resulted from three separate events, each one reflecting different professional or personal shortcomings.[13]

■ In the first instance of misconduct Goff pursued a civil action on behalf of a client long after it should have been apparent that the suit had no merit. Although Goff was aware the claims had no substantial justification, for purposes of delay and harassment, Goff doggedly continued to pursue those claims. Such misconduct raises serious questions regarding his professional judgment. It is a deficit related more to his character and integrity than his professional environment. Passionate pursuit of a client's cause must be tempered by objective, independent professional judgment. It is as important to recognize when to terminate a case as it is to initiate one.

■ Although a structured professional environment might have some tendency to minimize the likelihood of the recurrence of such misconduct, externally imposed practice conditions do not and cannot correct the fundamental problem: the failure to exercise objective judgment. Proof of the imposition of external prophylactic controls, without more, does not prove rehabilitation under circumstances where character shortcomings exist and are manifested in the exercise of poor professional judgment. Rehabilitation requires proof establishing that Goff has, in some way, altered the manner in which he exercises his judgment so as to preclude a loss of objectivity. No such evidence was forthcoming in this proceeding. Indeed, apart from Goff's instituting the minimum conditions required by the Conditional Admission, the only evidence bearing upon Goff's rehabilitation for his misconduct was his testimony that he had engaged in "soul searching" during the period of suspension.[14] That assurance, absent some corroborating evidence and/or evidence showing positive action to correct the character deficit, is insufficient to meet his burden of proof.

■ The second instance of misconduct arose out of Goff's advice to a client to delay or defer compliance with a court order. For the same reasons set forth above, the imposition of external conditions does not prove Goff's rehabilitation from this prior misconduct. The misconduct arose from Goff's willingness to ignore a court order with which he disagreed. Such misconduct manifests from personal and professional shortcomings in character and integrity, not from the surroundings in which the misconduct occurred.

■ Moreover, evidence introduced at trial negates rehabilitation for this character shortcoming. Goff's failure to supply a Consent to Arbitration or otherwise timely comply with the court's order for arbitration in the Bonghi dispute occurred during the peri-

13. Goff's Verified Petition for Reinstatement suggests that he has not yet recognized that his prior misconduct arose primarily from personal deficits rather than his professional surroundings. At paragraph 3 of the Verified Petition Goff stated "[m]y practice policies, which led to my suspension, have been totally revamped." The Verified Petition then recites the external controls, including the hiring of a firm manager, which reflect the conditions to which he agreed in the Conditional Admission. Apart from his unsupported assertion that he now realizes that he has allowed his passion and emotions to cloud his judgment, neither the Verified Petition nor the evidence presented reveal any facts upon which the PDJ and Hearing Board can rely to conclude that such realization, even if coupled with external controls, will prevent similar future misconduct.

14. In addition to "soul searching" or personal reflection, there must be some illustrative evidence from which it can be concluded that change is real.

od of suspension and is reflective of the same character deficit: a refusal to comply or delay in complying with a court order which is counter to Goff's perception of the appropriate course of action. Thus, Goff has failed to prove rehabilitation in connection with the second instance of misconduct.

The third instance of misconduct is based upon a lack of professional competence. The professional services Goff provided to a defendant in a criminal action charged with a serious crime fell far below that required of members of the Colorado Bar. Rehabilitation for such misconduct would necessarily require proof that Goff was presently aware of what professional services were required to competently represent a criminal defendant, proof of a willingness and ability to provide such services, and proof of the development of sufficient knowledge to recognize the need for co-counsel. Goff offered evidence that he had worked as a paralegal in his law office during the period of suspension, conducted research on cases handled by other lawyers and drafted pleadings, had read THE COLORADO LAWYER, a bar association publication which includes articles of general interest to the bar, articles analyzing issues of law and the reported decisions of state appellate courts and federal trial and appellate courts, and weekly publications relating to the law. Goff testified that he could not bring himself to attend continuing legal education courses during the period of suspension. Although this evidence tends to indicate that Goff made some effort to keep abreast of current developments in the law, it is not persuasive evidence, if evidence at all, that he expanded his professional knowledge base to the extent necessary to competently represent a criminal defendant charged with a serious crime, nor that he had developed sufficient insight to recognize when co-counsel was necessary.

In each of the three instances of misconduct which led to his suspension, Goff has failed to meet his burden of proof of rehabilitation. On that basis alone reinstatement must be denied.

There are additional grounds to deny Goff's reinstatement to the practice of law. Rehabilitation and fitness to practice law, although separate and distinct concepts, are often interrelated. The imposition of prior discipline of sufficient severity so as to require a formal reinstatement proceeding is the functional equivalent of a finding that the offending attorney is not fit to practice law.

C.R.C.P. 251.29(c) places the burden upon the disciplined attorney not only to establish rehabilitation but also to establish that he is fit to practice law. Goff's lack of rehabilitation, in light of the prior disciplinary findings, compels the conclusion that he is not presently fit to practice law.

Moreover, C.R.C.P. 251.29(e) requires the reinstatement board to consider all of Goff's prior discipline in arriving at its decision. *Tardiff,* 165 Cal.Rptr. 829, 612 P.2d at 923; *Roth,* 253 P.2d at 972. Doing so reinforces the PDJ and Hearing Board's conclusion regarding Goff's fitness to practice law. Examination of his four letters of admonition and his one private censure reveal conduct strikingly similar to the misconduct which resulted in his 1999 suspension. Goff's prior discipline reveals misconduct beginning in 1993 reflective of a willingness to shortcut processes and procedures proven over time to be necessary for proper representation of clients, to undertake representation of clients whose legal difficulty falls in areas of the law in which Goff lacks basic competency, and to ignore or fail to comply with court orders and rulings with which he disagrees. Notwithstanding prior efforts by the Supreme Court to warn and afford Goff an opportunity to reform his deficient conduct and competency, Goff's most recent misconduct reflects the same lack of character and fundamental integrity required of attorneys in this state.

Goff's lack of integrity and failure to undertake meaningful efforts to establish minimum competency evident from all of his prior discipline supports the PDJ and Hearing Board's conclusion that Goff is not presently fit to practice law.

### III. ORDER

It is therefore ORDERED:

1. That the Verified Petition for Reinstatement of Richard James Goff is DE-

NIED and Richard James Goff is DE-NIED reinstatement to the practice of law;

2. Goff is ORDERED to pay the costs of these proceedings;

3. The People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Petitioner shall have ten (10) days thereafter to submit a response thereto;

4. The effective date of the Denial of Richard James Goff's Verified Petition for Reinstatement is August 4, 2000.