Dear Stephanie P. Anderson
You have requested our opinion regarding the authority of a local government to arrange to confine prisoners temporarily in a detention facility in an adjacent state if a situation should arise in which the health and safety of the inmates are at risk and there is no available option within Maryland. You are particularly interested in whether such prisoners could be transferred under the Interstate Corrections Compact.
A sheriff or a local official charged with custody of inmates in a local detention facility has a common law and statutory duty to maintain their safety. In our opinion, if there is an emergency situation that threatens the safety of those prisoners, the sheriff or other custodian may carry out that duty by transporting inmates temporarily to another jurisdiction if there is no viable option within Maryland. However, the custodian could not transfer custody of the inmates to the adjacent jurisdiction in the absence of a law allowing such a transfer.
The Interstate Corrections Compact does not provide such authority, as it pertains only to transfers of prisoners between states. The Compact does not authorize a local government to transfer inmates directly to a facility in an adjacent state. It is possible that an agreement between a local government and the State that allowed the transfer of local inmates to the temporary custody of the Division of Correction for the purpose of transfer to another jurisdiction could provide a legal basis for transferring convicted inmates to an out-of-state facility under the Compact. However, the Compact does not *Page 93 
appear to encompass a transfer of pretrial detainees held in a local jail.
 I Background
A. State and Local Correctional Facilities
Under common law, a county jail was under the jurisdiction of the county sheriff, who was the custodian of its inmates. 85 Opinions of theAttorney General 338, 340-41 (2000). Home rule counties have authority to "regulate and control county jails . . . and to regulate all persons confined therein" under the Express Powers Act. Annotated Code of Maryland, Article 25A, § 5(C); Article 25B, § 13; see also Annotated Code of Maryland, Correctional Services Article ("CS"), § 11-201(b) (authority of charter counties). Accordingly, those counties may designate a county official or other person to oversee the county detention center and to be custodian of its inmates. 71 Opinions of theAttorney General 197 (1986) (concluding that Talbot County had authority to enact ordinance allowing private contractor to operate jail).
State correctional facilities are generally managed by the Division of Correction ("Division") of the Department of Public Safety and Correctional Services ("Department"). The Division is responsible for operating and supervising State facilities that confine adults who have been found guilty of a crime and sentenced to imprisonment. See CS §§ 1-101(d), 3-101 et seq. The Commissioner of Correction ("Commissioner"), appointed by the Secretary of the Department subject to the approval of the Governor and confirmation by the Senate, is in charge of the Division and its units. CS §§ 3-202, 3-203. The Division operates most State correctional facilities, while local correctional facilities are operated by one or more counties.[1] See CS §§ 1-101(j), 11-102(a). *Page 94 
Depending on the length of a sentence, an individual may be sentenced to a State correctional facility or a local correctional facility. Except for an individual sentenced in Baltimore City, a judge generally may not sentence an individual to the jurisdiction of the Division for 12 months or less. CS § 9-104.[2] A judge may sentence an individual to a local correctional facility if the sentence is for a period of not more than 18 months and the judge imposing the sentence is in a jurisdiction that is a party to the operation and maintenance of the local correctional facility to which the individual is sentenced. CS § 9-105.
Inmates may be transferred between State and local correctional facilities in specified circumstances. See generally CS § 9-301 etseq. The Commissioner may accept the transfer of an inmate from a local correctional facility if:
 (1) the inmate requires special behavioral or medical treatment or maximum security detention;
 (2) the local detention facility is not equipped to properly provide the necessary treatment or detention; and
 (3) when required by any other law, the committing court approves the transfer.
CS § 9-303. The Commissioner may, by mutual agreement with one or more counties, transfer a minimum security inmate to a local correctional facility for participation in community-based correctional programs.[3] CS § 9-304. In addition, the Secretary of the *Page 95 
Department may, as part of contract providing State financial assistance to a county, provide for the housing and rehabilitation in a local correctional facility of inmates sentenced to State correctional facilities. CS § 11-106.[4]
Inmates may also be transferred from a local facility if the Maryland Commission on Correctional Standards or an authorized inspector finds that there is a condition in the facility that is "life-threatening or health endangering." CS § 8-115(a). In such a case, the facility is to be closed and the inmates are to be transferred to "a suitable place of detention" determined by the Secretary. CS § 8-115(c)(1).[5]
Thus, the population of inmates in a local corrections facility may include individuals at various stages of the State's criminal justice process: recent arrestees awaiting arraignment; arraigned defendants awaiting trial; convicted defendants serving sentences of 18 months or less; convicted defendants awaiting transfer to a State facility; and convicted defendants transferred from a State facility.
B. Obligation to Maintain Safety of Inmates
At common law, the sheriff had an obligation to keep safely the inmates entrusted to the sheriff's custody. See 85 Opinions of theAttorney General 338, 340-41 (2000) (noting that duty included transporting prisoners). That obligation has been incorporated in statute. The managing official of a local correctional facility —i.e., the administrator, director, warden, superintendent, sheriff, or other *Page 96 
individual responsible for the management of the facility[6] — is responsible for the safekeeping and care of each inmate detained in or sentenced to the facility. CS §§ 11-103, 11-203; see also CS § 11-201
(duty of sheriff to "keep safely" each individual committed to the sheriff's custody). With the advice of the Commission on Correctional Standards, the Secretary has established minimum standards for inmate safety and other matters at both state and local correctional facilities.[7] CS § 8-103(a); COMAR 12.14.01 et seq.
C. Interstate Corrections Compact
Maryland is a party to the Interstate Corrections Compact ("Compact"), CS § 8-601 et seq., which was adopted by the General Assembly in 1973.[8] Chapter 471, Laws of Maryland 1973. The states adjacent to Maryland, except West Virginia, are also parties to the Compact.See D.C. Code § 24-1001; Va. Code Ann. § 53.1-216; *Page 97 
Pa. Penal and Correctional Institutions, § 61-1061 et seq; Del. Code, § 11-6570 et seq.
The Compact concerns the transfer of "inmates," a term defined to mean "a male or female offender who is committed to, under sentence to, or confined in a penal or correctional institution." CS § 8-603(b). "Institution" is defined as "any penal or correctional facility, including but not limited to a facility for the mentally ill or mentally defective, in which inmates may lawfully be confined." CS § 8-603(c).
A state that is a party to the Compact may contract with other states that are members of the Compact for the confinement of inmates pursuant to the Compact. CS § 8-604. The Compact refers to states that implement such contracts as the "sending state" — the state in which a transferred inmate was convicted or committed — and the "receiving state" — the state to which the inmate is sent for confinement. CS § 8-603(d), (e). Any contract under the Compact is to provide for duration of the contract; payments from the sending to the receiving state; participation in programs of inmate employment; delivery and retaking of inmates; and other matters that allocate rights and responsibilities of the sending and receiving states. CS § 8-604. The sending state retains jurisdiction over an inmate in the receiving state, which simply acts as the agent of the sending state, and may at any time remove or transfer the inmate.[9] CS § 8-605(a), (c).
The Compact does not abrogate or preclude any contracts for the transfer of inmates that a party state may have or enter into with a state that is not a party to the Compact. CS § 8-610. To our *Page 98 
knowledge, Maryland has not entered into any such contracts outside the Compact.
 II Analysis
You have asked whether a local government in Maryland may arrange to confine prisoners in a detention facility in an adjacent state[10]
should a situation arise where the health and safety of the inmates are at risk and there is no available option in the State.
One can hypothesize various scenarios. For example, a natural disaster, such as a flood or earthquake, or a man-made calamity such as terrorist incident, near a local detention center might put the health and safety of inmates in that facility at risk. If the only path to safety were an evacuation to or through an adjacent jurisdiction, the common law and statutory duty of the sheriff or other custodian to keep the inmates safely should provide adequate justification for transporting the inmates out of state temporarily. However, this duty would not necessarily authorize a transfer of custody of the inmates to another jurisdiction. And the permissible action of the custodian would depend on the facts and circumstances of the emergency. For example, if the Governor declares a state of emergency and directs the evacuation of an area including the local correctional facility, [11] a temporary removal of inmates to an adjacent jurisdiction might be the only way to comply with that order.
As we understand your inquiry, however, you are not asking us simply to imagine various disaster scenarios and assess permissible reactions to those disasters. Rather, you are engaged in a prudent effort to put mechanisms in place for transferring inmates in emergency situations to alleviate any need to make fine distinctions about the degree of necessity and routes of egress. In that effort you have focused on the Compact. *Page 99 
As outlined above, the Compact allows for contracts between states for the transfer of inmates. It does not address the transfer of inmates by local governments from local facilities. Nor is it particularly focused on relief of emergency situations. The underlying purpose of the Compact is to "provide for the mutual development and execution of such programs of cooperation for the confinement, treatment, and rehabilitation of offenders with the most economical use of human and material resources." CS § 8-602.
The General Assembly has not provided local governments with any independent authority to enter into agreements with other states for the transfer of prisoners. As noted above, Title 11 of the Correctional Services Article and, for home rule counties, the Express Powers Act grant specific powers to local governments to operate their correctional facilities, but those provisions do not include the authority to contract for the interstate transfer of inmates.
In other contexts, the Legislature has specifically authorized local governments to enter into mutual aid and other cooperative agreements with out-of-state governments. See, e.g., Annotated Code of Maryland, Criminal Procedure Article ("CP"), § 2-105 (allowing local governing body of a county or municipal corporation to enter into mutual aid agreements for its police officers and other agents to "go or be sent beyond the [jurisdiction's] boundaries . . . to any place within or outside the State"); PS § 14-8A-01 et seq. (authorizing reciprocal agreements by a county, municipal corporation, or other governmental agency within the National Capital Region[12] "within or outside the state . . . [to] establish, train, and implement plans" in accordance with § 7302 of the Intelligence Reform and Terrorism Prevention Act of 2004). Similarly, while several provisions of the State's emergency management law concern the authority of the State or a local government to act assist counterparts in other states, that law does not provide authority for *Page 100 
a local government to transfer prisoners out of state.[13] Seegenerally PS § 14-101 et seq.
The absence of a statute authorizing local governments to transfer inmates to out-of-state jurisdictions leads to the conclusion that local governments currently lack authority to enter into such agreements directly. Compare Arnold v. Colorado Dept. of Corrections, 978 P.2d 149,152 (1999) (inmate transfer agreement between state corrections department and Texas county held valid where Texas statute authorized county to enter into agreement) and XXVIII Kan. Op. Atty. Gen. 10,1994 WL 109101 at *4 (M arch 4,1994) (noting that Kansas statutory authority permits a city, county or the state to house prisoners outside their respective jurisdictional limits) with Tenn. Op. Atty. Gen. No. 92-04,1992 WL 544979 (Tennessee counties lack authority to enter into agreements with other states to accept prisoner transfers).
On the other hand, inmates in a local correctional facility could be transferred to a facility in an adjacent state if those inmates were first transferred, if only constructively, to the State. The Compact's definitions of "inmate" and "institution" would encompass convicted inmates in local correctional facilities and the facilities themselves.See CS § 8-603(b), (c). Maryland law authorizes the Commissioner and local governments to agree to transfer inmates in local custody to the Division for specified purposes. Such purposes include a transfer from a local facility if the facility is "not equipped to properly provide the necessary treatment or detention." CS § 9-303. In our view, this authority is sufficiently broad to allow a transfer of jurisdiction over an inmate from the manager of the local detention facility to the Commissioner for the purpose of transferring an inmate to a facility in an adjacent state pursuant to the Compact. *Page 101 
In sum, under the Compact, the Division may enter into agreements with other states for the transfer of prisoners. A Maryland county, in turn, enter into an agreement with the Division to transfer its inmates to the Division for the purpose of transferring them to an out-of-state jurisdiction. However, a local government in Maryland lacks authority to enter into such agreements directly with other states or local governments in other states.
Even if a local government arranges through the Division to transfer convicted inmates out-of-state under the Compact, that agreement would not encompass all of the inmates in a local correctional facility. As noted above, the Compact defines inmates who may be transferred pursuant to the Compact as "offenders." This suggests that the Compact applies only to those inmates who have been found to have violated the law — i.e., convicted defendants — and not individuals awaiting arraignment or trial.[14] The latter category potentially includes a large segment of the population of a local detention facility. See Maryland Department of Corrections 2006 Annual Report at p. 17 (stating that Baltimore Central Booking and Detention Center committed 44,855 detainees during fiscal year 2006).
To provide local governments with a greater ability to plan for emergency situations that may affect the safety of inmates at local correctional facilities, the General Assembly may wish to authorize local governments to enter into agreements with adjacent states and local governments for the transfer of inmates under specified emergency circumstances. As such agreements are likely to involve reciprocal obligations, such legislation would also presumably authorize local facilities in Maryland to accept inmates from out-of-state jurisdictions under equivalent circumstances in those jurisdictions. *Page 102 
 III Conclusion
In our opinion, a sheriff or a local official charged with custody of inmates in a local detention facility has a common law and statutory duty to maintain their safety. In an emergency situation that threatens the safety of those prisoners, the sheriff or other custodian may carry out that duty by transporting inmates temporarily to another jurisdiction if there is no viable option within Maryland. However, the custodian could not transfer custody of the inmates to the adjacent jurisdiction in the absence of a law allowing such a transfer.
The Interstate Corrections Compact does not provide such authority, as it pertains only to transfers of prisoners between the states. The Compact does not authorize a local government to transfer inmates directly to a facility in an adjacent state. It is possible that an agreement between a local government and the State that allowed the transfer of local inmates to the temporary custody of the Division of Correction for the purpose of transfer to another jurisdiction could provide a legal basis for transferring convicted inmates to an out-of-state facility under the Compact. However, the Compact does not appear to encompass a transfer of pretrial detainees held in a local jail.
Douglas F. Gansler Attorney General
Mark J. Davis Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] The Baltimore City Detention Center and the centralized booking facility for Baltimore City are under the jurisdiction of the Division of Pretrial Detention and Services of the Department. CS §§ 1-101(o),5-201(b). The definition of a "local correctional facility," CS § 1-101(j), potentially includes facilities operated by municipalities. It is our understanding that while municipal police departments may have holding areas, no municipality currently operates a correctional facility.
[2] The statute provides an exception if the sentence is for an offense committed by an inmate in a correctional facility under the jurisdiction of the Division and the inmate is still under the jurisdiction of the Division. See CS § 9-104(b).
[3] In addition, CS § 9-305, which provides in part that "an inmate of a maximum or medium security correctional facility in the Division . . . may not be transferred to . . . a local correctional facility unless the case management unit of the Division . . . participates in, evaluates, reviews, and provides final approval for the transfer," has been read as allowing the transfer of higher security inmates to local correctional facilities. See also 62 Opinions of the Attorney General 829, 836-37 (1977) (State prisoners may be held in local jail by agreement with the locality).
[4] A county is eligible to apply for State financial assistance for the construction or enlargement of a local facility if the Secretary determines that the anticipated confinement of inmates in the facility serving sentences of 12 months or less would exceed the facility's capacity. CS § 11-105.
[5] The Commission is to hold a hearing within 96 hours to confirm or countermand such an order that the facility cease operation. CS § 8-115(b).
[6] See CS § 1-101(k).
[7] These standards apply to both State and local facilities. CS § 8-103(a)(2). Other standards developed by the Commission relating to administration of a facility, training of personnel, and other matters are mandatory for State facilities, but optional for local facilities. CS § 8-103(b)(2).
[8] The Compact Clause of the United States Constitution provides in part that: "No State shall, without the Consent of Congress, . . . enter into any Agreement or Compact with another State." U.S. Const., Art. I, § 10, Cl. 3. An interstate compact approved by Congress becomes federal law. Cuyler v. Adams, 449 U.S. 433, 438 (1981). However, the Compact Clause applies only to agreements "directed to the formation of any combination tending to the increase of political power in the states, which may encroach upon or interfere with the just supremacy of the United States." United States Steel Corp. v. Multistate Tax Comm'n,434 U.S. 452, 468 (1978).
The courts are divided on whether the Interstate Corrections Compact is subject to the Compact Clause and should be regarded as federal law.Compare Stewart v. McManus, 924 F.2d 138, 142 (8th Cir. 1991) (holding that Compact is not subject to the Compact Clause, has not been approved by Congress, and therefore is not federal law that will support § 1983 action) with Cameron v. Mills, 645 F. Supp. 1119, 1127-28 (S.D. Iowa. 1986) (holding that Congress prospectively consented to the Interstate Corrections Compact in 1934 legislation and thus the compact is federal law).
[9] Much of the litigation involving the Interstate Corrections Compact has involved claims by prisoners that out-of-state transfers constitute banishment or a violation of due process. The courts have consistently rejected such claims. See, e.g., Olim v. Wakinekona,461 U.S. 238, 248 n. 9 (1983) (rejecting prisoner's claim of banishment because "[t]he fact that his confinement takes place outside Hawaii is merely a fortuitous consequence of the fact that he must be confined, not an additional element of his punishment."); Daye v. State,769 A.2d 630, 639 (Vt. 2000) (citing authorities and stating "general view . . . that out-of-state transfer of prisoners for the purpose of alleviating overcrowding or other correctional goals is not punishment equivalent to banishment or transportation"). See generally Michael B. Mushlin, 2Rights of Prisoners § 10.9 (3d.ed. Nov 2007).
[10] While your inquiry is focused on nearby jurisdictions, the same analysis would pertain to a transfer of inmates to other, more distant states.
[11] See Annotated Code of Maryland, Public Safety Article ("PS"), § 14-107.
[12] The National Capital Region includes Montgomery and Prince George's counties in Maryland; the District of Columbia; Arlington, Fairfax, Loudoun, and Prince William counties and the City of Alexandria in Virginia; and all cities and other units of government within any of those jurisdictions. 10 U.S.C. § 2674(f)(2).
[13] See, e.g., PS § 14-108 (providing that the Governor may assist with another state's emergency by authorizing a local government to use its resources in that other state); § 14-601 (adopting Interstate Emergency Management and Civil Defense Compact); § 14-701 et seq.
(adopting Emergency Management Assistance Compact). For example, under Article X of the Emergency Management Assistance Compact, states may develop mutual aid plans that include the orderly evacuation of populations across state lines. Such plans presumably could include the evacuation of the inmate population of a local correctional facility. PS § 14-702. A similar provision is contained in Article 9 of the Interstate Emergency Management and Civil Defense Compact. PS § 14-602.
[14] One court has held that an individual detained pending arraignment is not an "inmate" for purposes of the Compact. See Peoplev. Maldonado, 273 A.D.2d 537, 542 (N.Y.App. 2000). It is our understanding that the Department does not send individuals awaiting trial to other states under the Compact because of the need to try them in Maryland. *Page 103