**Vincent C. TODD, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 05PDJ074.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Aug. 9, 2006.

**1034**

## OPINION AND ORDER RE: RE-INSTATEMENT PURSUANT TO C.R.C.P. 251.29

### I. *ISSUE*

An attorney subject to reinstatement proceedings under C.R.C.P. 251.29 must prove rehabilitation by clear and convincing evidence. Petitioner is a knowledgeable lawyer who has engaged in professional and charitable activities throughout his career. However, Petitioner's disciplinary history reveals a pattern of neglecting clients, knowingly disobeying court orders, and concurrent mental health issues. Absent substantial evidence of a meaningful and sustained *change* in Petitioner's mental health, can the Hearing Board find clear and convincing evidence of rehabilitation?

*DECISION OF HEARING BOARD:* **AT-TORNEY REINSTATEMENT DENIED**

### II. *PROCEDURAL HISTORY*

On October 26, 2004, the PDJ accepted an Order Approving Conditional Admission and Imposing Sanctions and suspended Petitioner from the practice of law for eleven months and one day. Even though the PDJ suspended Petitioner for less than one year and one day, Petitioner and the People stipulated that before Petitioner could be reinstated, he would have to prove to a hearing board his rehabilitation by clear and convincing evidence, his compliance with all applicable disciplinary orders, and that he is otherwise fit to practice law. *See* C.R.C.P. 251.29(b)(c) and (d).

Petitioner filed a "Verified Petition for Reinstatement" on October 17, 2005. On October 19, 2005 the People filed an "Answer To Verified Petition For Reinstatement" and agreed to the technical sufficiency of the petition, but opposed reinstatement pending an investigation. On November 1, 2005, Petitioner filed a "Verified Supplement to Petition for Reinstatement" and the People filed

a "Supplemental Response" on November 3, 2005. The People again objected to the petition for reinstatement and alleged that the petition failed to set forth sufficient facts showing rehabilitation from the conduct and state of mind that led to Petitioner's suspension on October 26, 2004.

At the Reinstatement Hearing, the PDJ admitted Stipulated Exhibits 1–13. The parties also offered additional Stipulated Exhibits: 14, 15, 16 and Exhibit A, which the PDJ accepted into evidence. Petitioner testified on his own behalf and presented nine witnesses, both lay and professional, in support of his petition. The People presented one witness, David S. Wahl, M.D., a physician who is a board certified neurological psychiatrist.

## III. FINDINGS OF FACT

The Hearing Board finds the following facts by clear and convincing evidence.

Petitioner has taken and subscribed the Oath of Admission, was admitted to the Bar of the State of Colorado on May 25, 1983, and is registered as an attorney upon the official records of the Colorado Supreme Court, Attorney Registration No. 12955. Petitioner is subject to the jurisdiction of the Colorado Supreme Court and the Office of the Presiding Disciplinary Judge in these proceedings.

Petitioner is a sole practitioner who practiced criminal defense, fair debt collection and civil rights law before his suspension. He has been suspended from the practice of law since November 13, 2004.[1]

### A. Petitioner's Disciplinary History

1. On June 2, 1997, the Colorado Supreme Court publicly censured Petitioner for failing to communicate with his client and account to his client for money paid to Petitioner in a custody dispute.[2]
2. On June 18, 1997, the Colorado Supreme Court Grievance Committee admonished Petitioner for failing to file suit on behalf of a client in a timely manner. The Committee also noted its concern that Petitioner had not initially cooperated in the People's investigation.[3]

3. On August 22, 2000, the PDJ entered an Order Approving Conditional Admission and Imposing Sanctions and suspended Petitioner for one year and one day, all but thirty days stayed, followed by a two-year period of probation subject to conditions. Petitioner was required to continue receiving psychotherapy, attend the one-day Ethics School sponsored by the Office of Attorney Regulation, and submit to monitoring of client files as well as establish a workable tickler system to calendar client matters.[4] The factual basis for this suspension included two separate matters.
   a. In the first matter, Petitioner ignored show cause orders issued by United States Bankruptcy Court Judge Sidney Brooks after he repeatedly failed to appear for court-ordered hearings. When Petitioner finally appeared before Judge Brooks, nearly a year after the original show cause order, the court reduced the fine to $50.00 on the condition Petitioner pay it within ten days. Petitioner did not pay the fine within ten days. Petitioner finally paid it in full in April 1999, but by this time the fine had been increased to $1,500.00 based on his failure to comply with the court's order that reduced the fine.
   b. The second matter arose in late 1998 when Petitioner represented the law firm of P. Scott Lowery, P.C. ("the firm") in a contract dispute. Petitioner filed an answer on behalf of the firm, but failed to provide disclosures under C.R.C.P. 26, which led to a motion for sanctions and later an entry of default against the firm. Denver District Court Judge John Coughlin ordered Petitioner to provide disclosures and pay $150.00 in attorney fees within ten days or face the possibility of severe sanctions. Petitioner did not respond to the court nor did he advise his client of the order. Instead, Petitioner told his client that everything in

1. See Stipulated Exhibit 9.

2. See Stipulated Exhibit 1.

3. See Stipulated Exhibit 2.

4. See Stipulated Exhibit 3.

the litigation was under control. Judge Coughlin ultimately entered a judgment against Petitioner's client in the amount of $19,099.51 and the client paid the same. The firm then sued Petitioner and won a default judgment against him in the amount of $34,000.00 on September 7, 1999.

4. On November 14, 2000, the Colorado Supreme Court entered an order of reinstatement for Petitioner, relying upon his affidavits, which certified that Petitioner timely notified clients and opposing counsel of his August 2000 suspension as provided in the disciplinary rules.[5]

5. On September 18, 2001, the PDJ entered an Order Approving Conditional Admission and Imposing Sanctions and placed Petitioner on probation for an additional year consecutive to the earlier suspension imposed in August 2000. The factual basis for this additional sanction arose out of Petitioner's representation of Refinance America, Ltd. on a breach of warranty claim. Petitioner filed suit on behalf of his clients but later failed to respond to a motion to compel discovery. His failure to provide discovery led to orders from a United States Magistrate Judge compelling him to comply with the rules and ultimately a judgment against Petitioner's client. The client later sued and won a 1.4 million dollar malpractice judgment against Petitioner based upon his conduct in this case.[6]

6. On November 25, 2002, the PDJ entered an order and revoked Petitioner's probation and the reinstatement order of November 14, 2000. In his findings, the PDJ found that Petitioner filed an affidavit in his reinstatement petition pursuant to C.R.C.P. 251.29(c), which stated that he had notified opposing counsel of his suspension. The PDJ found, however,

that Petitioner filed this affidavit *knowing* that he had not notified opposing counsel on two cases. The PDJ also found that Petitioner neglected the client on these two cases and that his client's cases were ultimately dismissed for failure to prosecute.[7]

7. On June 11, 2003, the Colorado Supreme Court immediately suspended Petitioner *for failure to cooperate* in the People's investigation of 99PDJ110 and 00PDJ080.[8] On September 30, 2004, the Colorado Supreme Court affirmed the PDJ's order revoking Petitioner's probation and reinstatement.[9]

8. On October 26, 2004, the PDJ entered an Order Approving Conditional Admission and Sanctions, and suspended Petitioner for eleven months and one day with the condition that he petition for reinstatement pursuant to C.R.C.P. 251.29(c). The factual basis arose from Petitioner's neglect of a client matter. He failed to respond in any manner to a motion to dismiss, a motion for attorney's fees, or sanctions the court entered against him. In addition, Petitioner failed to notify opposing counsel in writing that he had been suspended from the practice of law.[10]

In a second case, Petitioner also knowingly failed to respond or appear after receiving orders from United States District Court Judge Edward Nottingham and United States Magistrate Judge Michael Watanabe concerning a summary judgment motion and motions for sanctions. The federal judge found that Petitioner "apparently decided to ignore entirely" the court's order to show cause. The magistrate judge found, Petitioner's conduct to be "obdurate and improper" causing unnecessary expense and delay in the proceedings.[11]

---

5. *See* Stipulated Exhibit 4.

6. *See* Stipulated Exhibit 5.

7. *See* Stipulated Exhibit 7.

8. *See* Stipulated Exhibit 6.

9. *See* Stipulated Exhibit 8.

10. This is the same matter that resulted the PDJ revoking Petitioner's probation on November 25, 2002. *See* paragraph 6 above.

11. *See* Stipulated Exhibit 10.

## B. Evidence Presented in Support of the Petition for Reinstatement

John S. Wilder, Municipal Judge of Monte Vista and County Attorney for Mineral County, Colorado testified to the first-rate work Petitioner performed on his behalf in a § 1983 civil rights case Petitioner tried in the United States District Court in 2002. Mr. Wilder hired Petitioner as counsel because he believes Petitioner is intelligent, skilled, and "a real fighter." [12] Although Petitioner lost a jury verdict in Mr. Wilder's case, the court granted a motion for new trial. Petitioner could not serve as counsel on the new trial due to his suspension, but he assisted Paul S. Grant, Mr. Wilder's new counsel, as a paralegal and played an active, non-lawyer role in the million-dollar judgment in the new trial. Mr. Wilder strongly believes Petitioner is fit to practice law.

John Tatum, an experienced lawyer who practices criminal law defense and general civil litigation, has known Petitioner since the 1980's when Mr. Tatum defended Aurora Municipal Court appeals. Since that time, his contact with Petitioner has been primarily through the Colorado Defense Bar Listserv, a website that allows its members to communicate with each other via the Internet. Petitioner frequently provides advice through the listserv to lawyers who seek answers to procedural and substantive issues in criminal law. Mr. Tatum noted that Petitioner sometimes "torques them [people] off" with the way he deals with other members of the listserv, but also noted that he is more mature since his current suspension. Mr. Tatum strongly believes Petitioner is fit to practice law and if needed, would serve as his practice monitor.

Leonard Frieling is a criminal defense lawyer with thirty years of experience litigating criminal cases in Boulder, Colorado. He also serves as an associate judge for the City of Lafayette. Mr. Frieling created the Colorado Defense Bar website and first met Petitioner through its listserv approximately eight years ago. He knows and respects Petitioner's knowledge of the law and appreciates his patience with young lawyers who use the listserv. Mr. Frieling would be "hon-ored" to have Petitioner on "our team" but could not speak to the possibility of Petitioner practicing on his own.

Joe Pickard is an attorney with over twenty years of general practice experience. He met Petitioner when they both participated in high school debate in the early 1970's. They have remained in contact with each other and have been adversaries in a number of cases during their legal careers. Mr. Pickard values Petitioner's advice as a lawyer and has relied on him within the last year for his "encyclopedic" knowledge of the law. Petitioner confided in Mr. Pickard that he had gone through a period of depression in the past but Mr. Pickard still has no concerns about Petitioner's present ability to practice law.

David Morgan, an experienced criminal defense lawyer and member of Colorado Defense Bar, testified that Petitioner is intellectually equal to the best legal minds in the Colorado Bar and that he often shares his knowledge with the Colorado Defense Bar's through its listserv.

Gary Perosco is a veteran criminal defense lawyer who specializes in defending DUI cases. He too respects and trusts Petitioner's legal skills and often relies on Petitioner's advice through the listserv.

Nancy Johnson is a seasoned criminal defense lawyer. She knows Petitioner from his work with the Colorado Criminal Defense Bar, the Jefferson County Democratic Party, and more recently from his work as a paralegal in a Colorado Organized Crime Control Act ("COCCA") case she tried and won. In his work as a paralegal on Ms. Johnson's case, Petitioner organized 36,000 pages of discovery, helped draft motions, interviewed witnesses, and provided instrumental assistance in obtaining additional discovery on the architecture of a prison facility in Colorado, the scene of the alleged crime. Ms. Johnson opines that Petitioner is intelligent, a good lawyer, and is competent to practice law. She has witnessed Petitioner's social skills as treasurer of the Jefferson County Democratic Party, a position he has held for two years.

---

12. The Hearing Board notes that several witnesses commented on Petitioner's zealousness in advocating on behalf of his clients and acknowledges that our advocacy system promotes such fervor.

Ms. Johnson testified she is unaware of any psychological issues that might affect his ability to practice law but also testified she has not closely reviewed Petitioner's most recent suspension or the circumstances leading to it.

William Barnett is a former officer of Refinance America, a former client who sued and won a judgment against Petitioner for malpractice. Mr. Barnett met Petitioner through Dave Michael, corporate counsel for Refinance America. Mr. Barnett is aware of the 1.4 million dollar judgment Refinance America obtained against Petitioner for malpractice, but he places some of the blame for missed deadlines on Refinance America for not timely producing discovery that Petitioner asked them to produce. Petitioner also represented Mr. Barnett's son in several juvenile criminal cases and did a "wonderful job." Petitioner also competently represented Mr. Barnett and his wife in a private business transaction.

Robert Boyle is a retired counselor with a Ph.D. in psychological counseling. Dr. Boyle ran a private practice for several years and specialized in treating trauma victims, including Vietnam veterans suffering from post-traumatic stress disorder. Dr. Boyle treated Petitioner for approximately six months to a year in 1999 and 2000. The sessions initially took place in-person, then later by telephone, and eventually ceased when Dr. Boyle asked Petitioner to represent him in a criminal case, at which time Dr. Boyle stopped treating Petitioner. Dr. Boyle also treated Petitioner's son from 1999–2001.

Dr. Boyle's therapy sessions primarily focused on the stress Petitioner encountered as a result of his disciplinary proceedings in 1999 and 2000. He found no evidence of a personality disorder, psychosis, or depression and testified that Petitioner has insights into his behavior. Dr. Boyle, however, never examined the conduct that led to the sanctions imposed against Petitioner in the prior disciplinary proceedings. According to Dr. Boyle, Petitioner is a zealous advocate who "is always hunting an authority figure to go after."

Petitioner completed twelve therapy sessions with licensed psychologist Kenneth G. Wilson, M.D., after he ended his "telephone therapy" with Dr. Boyle. In May 2001, at the conclusion of these therapy sessions, Dr. Wilson opined in a letter to the People that, "Mr. Todd is making reasonable progress at this time. There are no indications that he [Petitioner] will deteriorate *at this time*." [13] (Emphasis added).

Petitioner also testified on his own behalf in these proceedings. His legal background includes experience as a law clerk to Judge Philip Roan and work as an associate with Barbara Hughes where he litigated civil cases in 1983. Petitioner started developing his criminal practice at this time. In 1986, Petitioner started practice as a sole practitioner specializing in consumer protection, federal civil rights, and criminal defense law.

Since his suspension, Petitioner maintained his competence in the law by attending and completing various CLE programs, working as an Alternative Defense Counsel paralegal, developing a pleading system for defense lawyers, and participating in the Colorado Defense Bar Listserv. He has also been active in his church as a sound system technician and formerly chaired the religious education committee for his church.

Petitioner acknowledged that he still owes judgments entered against him for malpractice claims arising out of matters for which he has been disciplined as set forth above. He also acknowledged that he has not yet spoken to these former clients to work out a plan to resolve the judgments. His intention is to negotiate or otherwise resolve them *after* his reinstatement.

Petitioner admitted that he "screwed up" and made mistakes that led to the previously imposed disciplinary sanctions, but he also attributed some of the responsibility for his conduct to others. [14] He specifically claimed that in several instances, his clients either lost interest in their cases or failed to provide him with the necessary materials to prosecute their cases. Petitioner also claimed

---

**13.** *See* Stipulated Exhibit 13.

**14.** Petitioner also indicated to Gary S. Gutterman, M.D. in February 2000 that he "screwed

up" with regard to his previous instances of misconduct. *See* Exhibit 11.

"emotional overload" resulting from his past attempts to care for a young man he refers to as his son.

In May 1985, Petitioner met an 11-year old boy he now considers to be his son. At the time, Petitioner served as the boy's guardian *ad litem*. Petitioner admittedly became "too close" to this minor child and later withdrew from the case in December 1985. The Department of Human Services eventually placed the minor child with Petitioner in the summer of 1987. Petitioner's son is now 33-years old.

Petitioner's son repeatedly ran afoul of the criminal law and his legal problems overwhelmed Petitioner in the Raycomm and bankruptcy cases. According to Petitioner, "this relationship has impacted my ability to practice law." Yet, Petitioner claimed he could still "compartmentalize" the depression and stress caused by his son's issues so it would not affect his criminal defense practice. Petitioner testified that these experiences taught him not to accept complicated civil cases without co-counsel, especially where his clients fail to provide him with discovery or otherwise fail to cooperate.

Even though Petitioner acknowledged the emotional strain his son's legal problems caused him in the past, Petitioner intends to welcome his son into their home upon his release from the Department of Corrections. Petitioner stated that they have resolved the issues that caused them difficulty in the past. Petitioner nevertheless acknowledged that he had to carry a stun gun and use pepper-spray to control his son's physical outbursts in the past.

Petitioner explained his most recent suspension as a "screening problem" and an inability to properly calendar cases. Petitioner testified that he would not miss future court appearances, because he now uses a laptop loaded with sophisticated software that will eliminate the problems he experienced in the past. Furthermore, Petitioner now operates a "paperless office" that will not necessitate a staff when he returns to the practice of law.

Petitioner stated that he no longer suffers from depression and credits himself for pulling out of it with the help of Dr. Wilson who recommended no further treatment as of August 2001.[15] Recently, Petitioner saw Lon Kopet, M.D. who, according to Petitioner, issued a favorable report on Petitioner's current mental health. However, Petitioner did not call Dr. Kopet as a witness or offer a report from him for the Hearing Board to review.

Petitioner claims that he has learned to avoid stress and is resolved to never let things get out of control again. Petitioner wants to return to the practice of law as a sole practitioner, but he would be prepared to accept a practice monitor and seek further psychiatric treatment, if ordered as a condition of reinstatement. Petitioner further offered his opinion that the public and the courts would be better served with him practicing law than without him practicing law.

## C. *The People's Evidence, David S. Wahl, M.D.*

Dr. Wahl conducted a psychiatric evaluation of Petitioner and completed a report on February 7, 2006. Dr. Wahl interviewed Petitioner and reviewed his disciplinary history as well as earlier expert reports about his mental health.

In particular, Dr. Wahl reviewed a report rendered by Gary S. Gutterman, M.D.,[16] three months before the PDJ accepted Petitioner's Conditional Admission of Misconduct dated August 22, 2000. Dr. Gutterman found in his independent medical evaluation that "psychological factors have contributed to the patient's decision making and behavior with others, in his practice of law, which have lead to the Complaints with the Regulation Counsel." Dr. Gutterman further stated that Petitioner should continue with psychotherapy "focusing" on Petitioner's personality traits, which Dr. Gutterman found to include masochistic features.

In Dr. Wahl's view, Petition currently exhibits "clear signs and symptoms of an underlying significant personality disorder with narcissistic and/or paranoid traits that reveal themselves by way of poor judgment and

---

**15.** *See* Dr. Wilson's reports to the People, Stipulated Exhibits 12 and 13.

**16.** *See* Stipulated Exhibit 11.

over-determined legal pursuits." In rendering this opinion, Dr. Wahl relied heavily on two interviews of Petitioner, which lasted a total of ninety minutes, and the report prepared by Dr. Gutterman in April 2000. Dr. Wahl opined that Petitioner currently suffers from a personality disorder, but he believes Petitioner *could* return to work as a lawyer if sufficient safeguards were in place, including close monitoring and intensive weekly psychotherapy.

## IV. *LEGAL ANALYSIS*

The Hearing Board must first look to the rules applicable to the reinstatement process and then to case law, particularly Colorado Supreme Court case law, which provides considerable guidance in interpreting these rules. Pursuant to C.R.C.P. 251.29(b), an attorney subject to reinstatement proceedings must prove the following by clear and convincing evidence:

1. He has been rehabilitated;
2. He has complied with all applicable disciplinary orders and with all provisions of Chapter 20 of the Colorado Rules of Civil Procedure concerning attorney discipline; and
3. He is fit to practice law.

C.R.C.P. 251.29(c) sets forth the formal requirements for a petition for reinstatement and C.R.C.P. 251.29(d) requires the party seeking reinstatement to prove the averments in the petition by clear and convincing evidence. The People stipulated that Petitioner complied with all applicable disciplinary orders related to his suspension and that he is competent in his knowledge of the law. Therefore, the only issue before this Hearing Board is whether Petitioner proved by clear and convincing evidence that he has been rehabilitated and is otherwise fit to practice law as provided in C.R.C.P. 251.29(b).

■ The Colorado Supreme Court declared that in assessing rehabilitation we

"must include the consideration of numerous factors bearing on the [attorney's] *state of mind and ability.*" [17] These issues include but *are not limited to:*

> ... numerous factors bearing on the Petitioner's state of mind and ability, such as character, conduct since the imposition of the original discipline, professional competence, candor and sincerity, recommendations of other witnesses, present business pursuits of the Petitioner, the personal and community service aspects of the Petitioner's life, and the Petitioner's recognition of the seriousness of his previous misconduct.

*People v. Klein,* 756 P.2d 1013, 1016 (Colo. 1988); *see also Goff v. People,* 35 P.3d 487 (Colo.O.P.D.J.2000); and *Lockley v. People,* 96 P.3d 236 (Colo.O.P.D.J.2004).[18]

■ Reviewing these guidelines and the evidence presented at the Reinstatement Hearing, Petitioner's petition for reinstatement must be denied. Petitioner failed to present clear and convincing evidence that he has been rehabilitated. While it is undisputed that Petitioner possesses the cognitive and legal skills, such skills alone are not sufficient to demonstrate a change in his mental state. Furthermore, although respected members of the Bar testified to Petitioner's legal skills and value to the criminal defense bar, his church, and his political party, this testimony does not go far enough.[19]

Petitioner's disciplinary history demonstrates a perilous pattern, one in which he completely disregards his duties to his civil clients and the courts. The rules require the Hearing Board to "fully consider" Petitioner's past discipline and determine by clear and convincing evidence that he has taken action to correct the circumstances that led to the discipline *before* he is reinstated. C.R.C.P. 251.29(b).

A detailed review of Petitioner's state of mind evidence reveals that it is neither clear nor convincing that he no longer suffers from any mental disorder.[20] First, he engaged in

---

**17.** While this case interpreted the previous rule, C.R.C.P. 241.22, it looks to the ABA factors for determining rehabilitation and provides valuable guidance in this area.

**18.** The PDJ cites O.P.D.J. cases only for guidance and not as precedent.

**19.** Except for the recent case where Petitioner worked as a part of a team of lawyers and investigators with Ms. Johnson, most of his professional contacts were sporadic or via the Colorado Defense Bar Listserv.

**20.** Even if the Hearing Board entirely rejected Dr. Wahl's testimony, Petitioner's evidence does

a well-established pattern of misconduct over a period of eight years. Second, Petitioner's expert testimony concerning his state of mind dates back to May 2001 and is therefore out of date. Third, while it is true that Dr. Boyle and Dr. Wilson each reported in 2001 that Petitioner appeared to be dealing better with life stresses, Petitioner again neglected clients and knowingly disobeyed Judge Nottingham and Magistrate Watanabe. Fourth, Dr. Wahl's recent finding that Petitioner acted and continues to act with poor insight and judgment is well established by the stipulated exhibits in this case. Finally, Dr. Gutterman's April 2000 report corroborates Dr. Wahl's findings made in February 2006.

As previously set forth in this opinion, Petitioner acknowledged but did not discuss with his former clients how he intends to satisfy their malpractice judgments. *See In re Petition of Rubin,* 323 So.2d 257 (Fla. 1975) (unsatisfied judgments against a lawyer are antithetical to a showing of rehabilitation). The People did not require Petitioner to pay restitution as a condition of his reinstatement. However, the Hearing Board finds Petitioner needs to address this issue in a concrete manner in order to show rehabilitation.

## V. CONCLUSION

 To find Petitioner rehabilitated on this record would be contrary to our duty to protect the public, a paramount goal of the attorney disciplinary system. *See People v. Bertagnolli,* 922 P.2d 935, 939 (Colo.1996) and *ABA Standard* 1.1. In reaching this conclusion, the Hearing Board also considered Petitioner's important interest in continuing to practice law. However, that interest is a privilege and not a right. *See People v. Howard,* 147 Colo. 501, 364 P.2d 380, 381–82 (1961). Furthermore, granting Petitioner's petition *at this point* would not address the Hearing Board's important duties to educate and thereby help rehabilitate Petitioner so that he does not repeat this perilous and self-destructive behavior in the future.

## VI. ORDER

It is therefore ORDERED:

1. The Hearing Board **DENIES** Petitioner's Verified Petition for Reinstatement. Petitioner Vincent C. Todd, Registration Number 12955, **SHALL NOT** be reinstated to the practice of law.

2. Petitioner **SHALL** pay the costs of these proceedings; the People shall submit a Statement of Costs within fifteen (15) days of the date of this Order, and Petitioner may submit a response within ten (10) days thereafter.

not rise to the level of clear and convincing evidence.