**Larry K. LOCKLEY, Petitioner**

**v.**

**PEOPLE of the State of Colorado, Respondent.**

**No. 04PDJ022.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Aug. 4, 2004.

The Hearing Board, consisting of Hearing Board members, Dr. DAVID S. WAHL, M.D. and BOSTON H. STANTON, JR., a member of the bar, and WILLIAM R. LUCERO, Presiding Disciplinary Judge, issues the following opinion:

## OPINION AND ORDER OF REINSTATEMENT PURSUANT TO C.R.C.P. 251.8.5(d)(2) AND 251.29

*ATTORNEY LARRY K. LOCKLEY, REGISTRATION NO. 25840 IS REINSTATED TO THE PRACTICE OF LAW EFFECTIVE IMMEDIATELY*

On July 12, 2004, the Hearing Board heard evidence in a Reinstatement Hearing held pursuant to C.R.C.P. 251.29. James Darnel represented Petitioner, Larry K. Lockley ("Petitioner"). Fredrick J. Kraus, Assistant Attorney Regulation Counsel, represented the People ("People"/ "Office of Attorney Regulation Counsel").

The following witnesses testified in support of the Petition: Ronda Ntepp, Esq., a professor at Metro State College; Darrel Nulan, a lawyer with substantial experience in the practice of law in Denver; Brian Lockley, Petitioner's brother; and, Petitioner himself. Petitioner also introduced, Exhibit B, a single exhibit that included letters written in support of Petitioner's petition for reinstatement. The People offered no witnesses or exhibits and stated at the conclusion of the evidence they had no objection to the Petitioner's reinstatement, subject to the condition that he be required to obtain a practice monitor if he again becomes a solo practitioner within the next three years.

The Hearing Board considered the testimony, exhibits admitted, the Joint Trial Brief and factual stipulations of the Parties. The Hearing Board also evaluated the credibility of the witnesses; including that of the Petitioner and granted Petitioner's Petition for Reinstatement with certain conditions as provided in C.R.C.P. 251.29(e). In reaching this decision, the Hearing Board made the follow-

ing findings of fact, by clear and convincing evidence.

## I. FINDINGS

Larry K. Lockley took the oath of admission and was admitted to the bar of the State of Colorado on September 12, 1995, and is registered as an attorney upon the official records of this Court, registration number 25840. Following a Stipulation, Agreement, and Conditional Admission of Misconduct dated August 13, 1999 in 99PDJ005, Presiding Disciplinary Judge, Roger L. Keithley, entered an order suspending Larry K. Lockley for a period of 18 months.

Before his suspension, Petitioner practiced for two years as an associate for the law firm of Trimble and Nulan. He then went into private practice as a sole practitioner. It was during this time the Petitioner encountered difficulty in meeting his court-ordered child support obligation as well as his responsibilities in two client matters. This misconduct, described below, resulted in his suspension.

Petitioner testified that the factors contributing to his suspension included the following:

- He could not keep up with the demands of his solo practice. While he was practicing with Trimble and Nulan for two years, he had both administrative and professional support that included a secretary and experienced lawyers to help him with administrative and business decisions such as collecting fees. As a solo practitioner, he had to "wear all these hats" and found the task overwhelming. He was not prepared to take on these responsibilities and as a consequence failed to honor his duties to pay child support and professionally represent two clients.

- He failed to incorporate in his own practice the organizational skills, tools, and support available to him while practicing at Trimble and Nulan. This included maintaining a calendar and tickler system to assure timely filings and court appearances and otherwise keeping control of scheduled matters. He took on more than he could handle professionally and was not carefully monitoring his cases. Much of his practice at this time was criminal, including contract work for the City and County of Denver for indigent defendants who appeared in County Court. He also represented domestic relations clients.

- In the Diane Tosado case, Petitioner admitted he "dropped the ball" when representing her. In March of 1999, Petitioner accepted $500 to file a marriage dissolution action for Ms. Tosado. After meeting with her twice, he misplaced her file and then completely "forgot" her case. At the time he accepted a fee from Ms. Tosado, he was in the process of moving his office but he did not notify her. She had no way of contacting him and he did not contact her. After Ms. Tosado reported this matter to the Office of Attorney Regulation Counsel, Petitioner returned the $500 she paid to retain him.

- In the Vidal J. Padilla matter, Laurie Padilla, Vidal's sister, hired Petitioner to file a marriage dissolution action for her brother Vidal. Ms. Padilla paid Petitioner $874 to initiate this process and an additional $350 to conclude it. After he filed the action, the court set the matter for permanent orders on March 1, 1999. Petitioner was to meet with Vidal and Laurie Padilla on February 15, 1999 for final trial preparation. He did not. When they tried to reach him, they found that his phone number and pager were disconnected. Petitioner was immediately suspended on February 17, 1999 for failure to pay child support. However, he failed immediately to notify the Padillas and withdraw from the case. Mr. Padilla was forced to hire another lawyer, at a cost of $300, the day before the permanent orders hearing. Petitioner did not initially return the unearned portion of his fee to the Padillas but has now paid Ms. Padilla $150 as the unearned portion of the fees he accepted for this case.

- In January 1999, Petitioner self-reported his failure to pay child support. On July 27, 1998, the Boulder District Court or-

dered Petitioner to pay $750 per month in child support to his children from his first marriage, commencing August 1, 1998. At the time he was $16,952 in arrears. By January 1999 that figure had risen to $20,102. The children from his first marriage lived in Compton, California at the time. Petitioner acknowledged that they needed his financial support to help them and his former wife to move to a better location. Nevertheless, Petitioner did not honor the court's child support order. He was having financial difficulty maintaining his new family, a wife and daughter. His new wife was paying for the remodeling of their home and pressed him to start collecting from his clients. In order to catch up financially, he took on more clients than he was able to handle professionally and failed to collect fees from them. This exacerbated his ability to cope with personal and professional responsibilities.

Petitioner's former wife (from his second marriage), Narquetta Ricks, wrote a letter in support of Petitioner's petition to reinstatement. She described the pressures on Petitioner she believed led to his suspension:

> Larry's suspension from practicing law was a very difficult time for our family in 1999. At the time of Larry's suspension, he had already made the transition to working outside of the legal arena he loved. While he really enjoyed helping people in the law, he was just not making enough money to support our family as well as his children. I would frequently encourage him to charge more for the services but he strongly resisted. He would work very long hours without any type of administrative support, and at the end of the day, would not really have much financially to show for his efforts. I believe the lack of administrative support was the contributing factor to the issues involving his clients and the lack of income was the factor in his falling behind in his child support.

- At the time Petitioner was suspended, he was working as contract lawyer for the City and County of Denver covering up to 15 cases a week while trying to maintain his private practice. At times he took his four-year-old daughter to work with him because he could not afford childcare. He also had an injury he suffered playing basketball that required months of physical rehabilitation during this time.

Since his suspension, Petitioner has been involved in several community service activities including Inroads Inc., a non-profit program for minority students to introduce them to opportunities in the corporate world. He also has donated time to Junior Achievement, a non-profit program, where he spoke to elementary and middle school students about the free enterprise system.

Petitioner candidly admitted his failure to live up to his responsibilities as a father and lawyer and has learned several lessons in the process. First, he has found a place in the corporate world. He works for StorageTek as a national investigator of employment discrimination complaints against the company. As an investigator, he was praised for his work during a recent internal audit, including his case management system. He has submitted a career advancement plan that includes his proposal to work for StorageTek as an in house lawyer litigating discrimination cases.

Second, Petitioner now recognizes the importance of the support the corporate environment provides him. He realizes he cannot "wear all the hats" of a sole practitioner and do his best for all clients.

Third, he has learned that he failed his profession and his family with the behavior that brought about his suspension. He wants an opportunity to correct these failures. He stated that he does not want his suspension to be his "legacy."

Finally, he appreciates that he should treat his clients the way he expects to be treated in their place. His remorse for his lack of professionalism is genuine.

When asked why he did not apply for readmission within 18 months, he answered he was not ready and needed time to reflect on the problems that led to the suspension. He also felt he should not act in haste for

fear of finding himself in the same situation that led to his suspension. If he is reinstated and is ever forced to return to solo practice, which he has no plans to do, Petitioner now recognizes the extreme challenges of practicing law alone. If he finds himself in these circumstances, he appreciates the need for and has, as a condition of his reinstatement, agreed to hire a practice monitor and to establish an effective case management system. He testified, however, that he wants, and in all likelihood will continue, to work at StorageTek for the foreseeable future, though he hopes to advance to a legal position.

Petitioner said that if he ever found himself in arrears on child support again, he would "get another job" to keep up with his obligation to pay the same. The Hearing Board trusts Petitioner will not find himself in a position where he has not paid child support. If he does, he now has the experience to know that overextending himself is dangerous. With reference to the client matters that caused him to be grieved, Petitioner says that he has learned his lesson and will not neglect clients in the future. He recognizes his conduct was wrong and caused harm to his clients, family, and profession, for which he expresses remorse. The Hearing Board finds that Petitioner has accepted responsibility for his actions and is resolved to avoid the conduct that brought him before this Court.

No mental health professional appeared on Petitioner's behalf. While the Hearing Board would have appreciated such testimony, it is not necessary to evaluate Petitioner's request to be reinstated.

## II. ANALYSIS UNDER C.R.C.P. 251.29(b)

■ An attorney seeking reinstatement following a suspension "must prove by clear and convincing evidence that he has been rehabilitated, has complied with all applicable disciplinary orders and with all provisions of this chapter [Discipline and Disability], and is fit to practice law." C.R.C.P. 251.29(b). The People agree the Petitioner has met this test.

■ The Supreme Court in *People v. Klein,* 756 P.2d 1013 (Colo.1988), set forth the criteria that a Hearing Board must consider in reinstatement proceedings to determine whether an attorney is rehabilitated. *Klein* provides:

[A]ny determination of that issue [rehabilitation] must include consideration of numerous factors bearing on the Petitioner's state of mind and ability, such as character, conduct since the imposition of the original discipline, professional competence, candor and sincerity, recommendations of other witnesses, present business pursuits of the Petitioner, the personal and community service aspects of the Petitioner's life, and the Petitioner's recognition of the seriousness of his previous misconduct. *Id.* at 1016.

The Parties stipulated that Petitioner complied with all applicable orders and all applicable provisions of the Colorado Rules of Civil Procedure and is fit to practice law. Regulation counsel concedes that Petitioner has met the basic requirements for reinstatement but he requests the added condition of a practice monitor, as described below, if Petitioner returns to private practice as a solo practitioner in the next three years. The Hearing Board finds that such a condition is reasonable and desirable given the great difficulty Petition had when he tried to practice law without support from experienced lawyers like those at Trimble and Nulan. See C.R.C.P. 251.29(e)

During the hearing, Petitioner was candid and demonstrated by clear and convincing evidence that he has undergone a "fundamental" character change. He acknowledges the wrongfulness of his conduct and demonstrates genuine remorse for his misconduct. He accepts responsibility for his actions and does not blame others for his conduct or the consequences stemming from that conduct.

For the reinstatement hearing, Petitioner offered three witnesses and eight letters from family and co-workers that attest to his character and rehabilitation. Significantly, Mr. Nulan, in whose firm Petitioner practiced for two years before he left in favor of practicing alone, testified that Petitioner was an excellent lawyer whose work was highly

professional. Mr. Nulan stated he would hire Petitioner again without reservation.

Petitioner has demonstrated rehabilitation by recognizing and taking responsibility for the problems that led to his suspension and taking action to correct them:

- He developed and followed through on a plan to pay back arrearages and stay current on support for his three children. From all reports, he is a committed and loving father.

- He has thought seriously about his future and how to balance his career with the need to provide for his children by finding work in the corporate environment. If he returns to legal practice, his goal is to work as a corporate attorney in the employment area.

- His performance at his job at Storage-Tek indicates that he has addressed his problems with organization. In a letter in support of his petition for reinstatement, Randy Williams, a co-worker in StorageTek's Human Resources division, noted that during an internal audit of the department Petitioner was one of only four people recognized for management practices.

- He has established proficiency in the law by taking numerous CLE courses listed in his petition. Though he is not currently practicing law, his position at StorageTek as an investigator for the human resources division in employment cases has offered him an opportunity to investigate employment discrimination claims, matters with legal implications.

- He shall hire a practice monitor and report during this period to the Office of Attorney Regulation Counsel in the event he returns to solo practice in the next three years.

Having established by clear and convincing evidence his compliance with all past orders of court, his fitness to practice law, and his rehabilitation, the Hearing Board orders that Petitioner, Larry K. Lockley, attorney registration number 25840, shall be reinstated to the practice of law.

### III. ORDER

It is, therefore, ORDERED:

1. Petitioner's Petition for Reinstatement under C.R.C.P. 251.8.5. and 251.29 is GRANTED, effective immediately.

2. Petitioner shall pay the costs of these proceedings, including all funds that are due and owing to the Client Protection Fund. The People shall file a Statement of Costs within 15 days of the date of this Order; Petitioner shall file any Response thereto within ten days of receipt of the Statement of Costs. If no response is filed, Petitioner shall pay all costs in full as set forth in the People's Statement of Costs.

3. In accordance with the Party's Stipulation and pursuant to C.R.C.P. 251.29(e), the Hearing Board imposes the following conditions upon Petitioner, Larry K. Lockley, to his resuming the practice of law:

(a) If, within the next three years from the effective date of this Order, the Petitioner returns to the solo practice of law, or to the practice of law with a single practitioner of less than five years experience, the Petitioner shall immediately notify the Office of Attorney Regulation Counsel and secure at his own cost for one year the services of an attorney who shall act as a practice monitor. Petitioner and the Office of Attorney Regulation Counsel shall mutually agree on the practice monitor who will be an attorney with a minimum of six years experience in good standing with the State of Colorado. If the Parties are unable to agree, the Presiding Disciplinary Judge shall choose the practice monitor.

(b) The practice-monitoring program shall consist of the following:

(i) For the first six months, Petitioner and the practice monitor shall meet once a month to review cases. The Petitioner shall prepare a list of current and active files for review with the practice monitor. The practice monitor shall take steps to verify that the list is complete. The practice monitor shall review the files to veri-

fy that Petitioner handles all matters promptly, keeps clients informed of progress on their matters, files meritorious pleadings pursuant to the appropriate court rules, and uses an effective tickler system to insure all deadlines are timely met. Additionally, the practice monitor shall review the files to verify that Petitioner enters into a written fee agreement in each matter in compliance with Colo. RPC 1.5, uses an appropriate record keeping system identifying each trust client, performs a monthly trial balance of each client ledger, balances the trust account each month, and backs up all trust account client records.

(ii) For the following six months, the Petitioner and the practice monitor shall meet every other month, unless the practice monitor deems additional meetings necessary.

(iii) The Petitioner shall write down specific suggestions the practice monitor offers to insure that cases are being handled properly and professionally and Petitioner is progressing satisfactorily for the duration of the monitoring period.

(iv) The practice monitor and the Petitioner shall review the list of suggestions from the previous meeting to be sure all suggestions for improvement have been implemented and Petitioner has complied with them.

(v) Within ten days following each meeting, the practice monitor shall submit to the Office of Attorney Regulation Counsel a signed written report of the meeting copied to Petitioner. The practice monitor shall immediately disclose to the Office of Attorney Regulation Counsel any matters Petitioner does not correct or which represent significant problems requiring corrective attention. Copies of this correspondence shall be sent to the Petitioner.

(vi) The Office of Attorney Regulation Counsel shall notify the practice monitor of the obligations listed in paragraph (v.) above.