Michael P. **FOSSENIER**, Petitioner,

v.

The **PEOPLE** of the State of **Colorado**, Respondent.

No. 06PDJ027.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Nov. 20, 2006.

On August 14–15, 2006, a Hearing Board composed of SHEILA K. HYATT, BRUCE W. SATTLER, both members of the Bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("PDJ"), held a Reinstatement Hearing pursuant to C.R.C.P. 251.29(d) and 251.18. Michael P. Fossenier ("Petitioner") appeared *pro se* and Nancy L. Cohen represented the Office of Attorney Regulation Counsel ("the People") in these proceedings.

## OPINION AND ORDER RE: RE-INSTATEMENT PURSUANT TO C.R.C.P. 251.29

### I. *ISSUE*

An attorney subject to reinstatement proceedings under C.R.C.P. 251.29 must prove compliance with all disciplinary orders, fitness to practice, and rehabilitation by clear and convincing evidence. The People stipulated that Petitioner complied with all applicable disciplinary orders and that he is professionally competent. Petitioner provided substantial evidence of a meaningful and sustained change in his character since the time of his original suspension. Should the Hearing Board reinstate Petitioner's license to practice law?

*DECISION OF HEARING BOARD:* RE-INSTATEMENT GRANTED

### II. *PROCEDURAL HISTORY*

On April 29, 2004, the PDJ transferred Petitioner to disability inactive status in case number 04PDJ042.[1] On July 15, 2004, the

---

1. *See* Stipulated Exhibit 1.

PDJ issued an "Order Approving Conditional Admission and Imposing Sanctions" in case number 04PDJ068 and suspended Petitioner from the practice of law for a period of six months with the requirement that he petition for reinstatement.[2]

On March 2, 2006, Petitioner requested consolidation of his disability and disciplinary cases for the purpose of filing a single petition for reinstatement. The PDJ held a hearing, questioned Petitioner on the issue, and found that he knowingly wished to waive his right to confidentiality regarding the disability matter. The PDJ granted Petitioner's request for consolidation on March 17, 2006.[3]

Petitioner thereafter filed a "Verified Petition for Reinstatement" on April 11, 2006. On April 13, 2006, the People filed an "Answer to Verified Petition for Reinstatement" and agreed to the technical sufficiency of the petition, but took no position regarding reinstatement pending an investigation.

At the Reinstatement Hearing, the People stipulated that Petitioner had complied with all applicable disciplinary orders related to his suspension and that he is professionally competent.[4] The PDJ accepted and admitted stipulated exhibits 1–7 and 11–18 into evidence at the hearing. Petitioner testified on his own behalf and presented nine additional witnesses (one by affidavit), both lay and professional, in support of his petition. The People did not present any witnesses and at the close of the case agreed that Petitioner should be reinstated with certain conditions.

### III. FINDINGS OF FACT

The Hearing Board finds the following facts established by clear and convincing evidence. Petitioner has taken and subscribed the Oath of Admission, was admitted to the Bar of the State of Colorado on October 27, 1988, and is registered as an attorney upon the official records of the Colorado Supreme Court, Attorney Registration No. 17804. Petitioner is therefore subject to the jurisdiction of the Colorado Supreme Court and the Office of the Presiding Disciplinary Judge in these proceedings.

Petitioner cooperated with the People throughout the investigation, disciplinary process, and petition for reinstatement.[5] He voluntarily sought and obtained a "hair follicle" drug test (negative result) from A.B. Counseling on June 17, 2006.[6] Petitioner also had no instances of ethical misconduct from the date of his suspension through the date of his reinstatement hearing.[7]

### Prior Misconduct

On May 28, 2003, Petitioner engaged in conduct leading to the suspension of his license to practice law. Petitioner, while intoxicated, forced open the doors to an apartment belonging to someone he did not know and attacked the occupant. Petitioner ended up in the hospital with critical injuries after sustaining a blow to the head from a baseball bat. Police arrested Petitioner and took him into custody upon his release from the hospital.

In June 2003, Petitioner was charged in Arapahoe County with first-degree burglary in violation of C.R.S. § 18–4–202, and criminal mischief in violation of C.R.S. § 18–4–501. Petitioner pled guilty to second-degree burglary (F4) and misdemeanor criminal mischief (M2). Petitioner was sentenced to one year of probation for the criminal mischief and a three-year deferred sentence for the second-degree burglary.

### Petitioner's Testimony

Petitioner grew up in Grand Junction, Colorado, and presently resides in Golden, Colorado. He graduated from Mesa State College in May 1985, and the University of South Dakota Law School in May 1988. His legal background includes experience in private practice, specializing mostly in commer-

---

2. *See* Stipulated Exhibits 2 & 3.

3. *See* Stipulated Exhibit 4.

4. *See* Stipulated Exhibits 7 & 11–14.

5. *See* Stipulated Exhibit 17.

6. *See* Stipulated Exhibits 15 & 16.

7. *See* Stipulated Exhibit 17.

cial and personal injury litigation. Petitioner considers himself a "very good trial attorney" with experience in over thirty district court trials. Since his suspension, Petitioner has maintained his competence in the law by attending thirty-nine hours of CLE programs as evidenced by the stipulated exhibits.

Petitioner testified that he began experiencing problems with alcohol in the late 1990s. He could not define a particular event that precipitated his problem, but speculated it could have been related to his deteriorating relationship with his fiancée and/or his declining ability to play competitive rugby on a national level. Petitioner testified that during this time, he felt unsuccessful, became less social, and compensated with alcoholism.

In December 2000, Petitioner was arrested for Driving Under the Influence ("DUI") in Douglas County. He pled guilty and was sentenced to one year of probation. On January 22, 2001, Petitioner entered a 28–day inpatient treatment program at the Rio Grande Treatment Center in New Mexico. Upon his release, Petitioner spent time in and out of various treatment programs in New Mexico and Colorado, including the Cenikor program, with varying degrees of success.

In May 2003, Petitioner was arrested for the misconduct that led to his suspension from the practice of law. Shortly after his release from jail, Petitioner was again arrested for DUI.

Petitioner entered the Cenikor program for a second time on June 13, 2003.[8] Cenikor is a highly intensive and highly structured residential treatment program that offered Petitioner a "therapeutic community" approach to his treatment. This approach involved "tearing down" the residents and building them back up over a period of eighteen to twenty-four months. Petitioner remained in the Cenikor program until May 28, 2004, and then transferred to the Wright Center Residential Treatment Center.

The Wright Center is a transitional facility designed to take individuals coming from a residential program. Petitioner described it as a "¾ house" where he was expected to maintain full-time employment and attend on-sight and off-sight classes and counseling sessions. He remained at the Wright Center until May 2005.[9]

By this time, Petitioner had been sober for approximately two years. However, shortly after leaving the Wright Center in May 2005, Petitioner suffered a relapse. He went on a four-day drinking binge after arrangements for an apartment fell through and he was laid-off from his job. During this time, Petitioner testified that he experienced a "moment of clarity." Petitioner stated that he "woke up" during this relapse and saw what he was doing to himself. An EMT friend he called for help took him to the West Pines Facility, a combination detoxification/rehabilitation facility. Here, Petitioner met his current AA sponsor and made the serious commitment to the AA program he continues to this day.

On June 22, 2005, Petitioner voluntarily entered therapy with David J. Muller, M.D. He initially met with Dr. Muller every couple of weeks and the frequency of meetings decreased over time. Dr. Muller diagnosed Petitioner as a chronic alcoholic in remission with intermittent depression. Dr. Muller provided counseling and general monitoring of Petitioner's other forms of care.

On May 15, 2006, Petitioner began working for the law firm of Underhill & Underhill, P.C. and remains there to the date of this reinstatement hearing.[10] He spends his limited spare time playing golf and playing rugby on a less competitive level. Now when he is alone, he does not feel depressed and does not feel any urge to take a drink.

Petitioner candidly testified about the conduct that directly led to the suspension of his license to practice law. He accepted the serious nature of his past behavior and accepts full responsibility for his excessive use of alcohol. Although suspended for only six months, Petitioner waited over two years to

---

8. *See* Stipulated Exhibit 17.

9. *See* Stipulated Exhibit 6.

10. *See* Stipulated Exhibit 17.

seek reinstatement knowing he was not ready earlier. Petitioner believes he has experienced the necessary fundamental or "psychic" change in his character. Petitioner acknowledged that he is not cured from alcoholism and that his continued sobriety depends on maintaining a positive lifestyle. He is ·willing to do everything to maintain his rehabilitation, because he wants to practice law again and be a productive member of society.

### Additional Testimony in Support of Petition for Reinstatement

Jeffrey Weiskopf manages property for the Colorado School of Mines campus. He met Petitioner at the Wright Center Residential Treatment Center approximately 2½ years ago. Mr. Weiskopf served as Petitioner's "buddy" in the program and testified to the structured environment of the Wright Center. He also testified to a "fundamental change in character" in Petitioner over that time including his attitude, sincerity, humility and willingness to work on "his issues." Mr. Weiskopf recommended reinstatement of Petitioner.

Leo Peltier is a self-employed home-improvement consultant. He met Petitioner at the West Pines detoxification facility approximately fourteen months ago and is presently Petitioner's AA sponsor. Mr. Peltier has seen Petitioner take initiative in his recovery and acknowledge "his issues." He has also seen a spiritual change and a change in the way in Petitioner treats others and himself. Mr. Peltier believes Petitioner can be a constructive member of the community and recommends his reinstatement to the practice of law.

Petitioner's parents, Lornah and Jerome Fossenier, each testified to their own experiences in dealing with Petitioner and his alcoholism over the past several years. Their support played an integral part in Petitioner's recovery from his alcoholism. They both believe Petitioner underwent amazing changes and now is a different person. The Fosseniers both recommend Petitioner's reinstatement to the practice of law.

David J. Muller, M.D. is a board-certified psychiatrist who regularly treats individuals with substance abuse problems including alcoholism.[11] The PDJ admitted Dr. Muller as an expert witness in this regard. Dr. Muller testified he first met Petitioner on June 22, 2005. Petitioner had voluntarily sought his counsel. Dr. Muller found Petitioner to be open and honest about his past and observed that Petitioner acknowledged the serious nature of his past conduct. He diagnosed Petitioner with chronic · alcohol dependence (or alcoholism) in "sustained remission." Dr. Muller concluded that Petitioner is committed to his sobriety, his prognosis is "good" and that future therapy could be scheduled on an "as-needed basis." He recommended that Petitioner abstain from alcohol and continue ·with his AA program. Dr. Muller opined that Petitioner would be a responsible member of the Bar.

Mark Barnes is Chief Probation Officer for the Eighteenth Judicial District. He served as Petitioner's probation officer and first met Petitioner on May 11, 2004. Mr. Barnes found Petitioner cooperative, productive, compliant, and easy to work with in part because Petitioner never missed an appointment. He testified that Petitioner self-disclosed his May 2005 relapse. Mr. Barnes believes Petitioner moved forward and made a lot of progress in the two years they worked together and believes he would make "a heck of an attorney."

Mark A. Hanson is lead counsel for Allstate Staff Counsel in Denver, Colorado. He met Petitioner when they worked together in the Staff Counsel's office on April 30, 1993. Mr. Hanson testified that he witnessed Petitioner's trial work and found him to be a very good and responsible attorney. He has witnessed a "psychic change" in Petitioner over the past several years. Mr. Hanson believes Petitioner is now a constructive member of society and recommends his reinstatement to the practice of law.

Maggie Bazan–Gleeson is Petitioner's former fiancée. They met in 1993 and spent the next seven years together as a couple. She witnessed the beginning of Petitioner's trou-

---

11. *See* Stipulated Exhibit 5.

bles with alcoholism in the late 1990s and attempted to help him. Ms. Bazan–Gleeson remained supportive after their break-up and she and her husband continue to provide Petitioner with both financial and emotional support. She is "happily surprised" with Petitioner's success to date considering Petitioner's condition at the end of their relationship and is grateful they continued to remain friends. Ms. Bazan–Gleeson has witnessed a fundamental change in Petitioner's character and claims he is a different person. Ms. Bazan–Gleeson emphasized that she trusts Petitioner with her children and that they enjoy a great relationship together. She also recommends Petitioner's reinstatement to the practice of law.

Jamey Ellerbe is a manager for Oreck Floor Care Center in Boulder, Colorado.[12] He met Petitioner on September 5, 2005. Petitioner worked for Mr. Ellerbe on a full-time basis in the capacity of a floating manager and assisted in all aspects of the business. Mr. Ellerbe stated that Petitioner "was completely up front as a new employee regarding his issues involving alcohol and substance abuse and his efforts at recovery." He also stated that Petitioner appears completely committed to his recovery and to being a productive and positive member of the community.

## IV. *LEGAL ANALYSIS AND CONCLUSIONS OF LAW*

The Hearing Board must first look to the rules applicable to the reinstatement process and then to case law, particularly Colorado Supreme Court case law, which provides considerable guidance in interpreting these rules. Pursuant to C.R.C.P. 251.29(b), an attorney subject to reinstatement proceedings must prove the following by clear and convincing evidence:

1. He has been rehabilitated;

2. He has complied with all applicable disciplinary orders and with all provisions of Chapter 20 of the Colorado Rules of Civil Procedure concerning attorney discipline; and

3. He is fit to practice law.

■ C.R.C.P. 251.29(c) sets forth the formal requirements for a petition for reinstatement and C.R.C.P. 251.29(d) requires the party seeking reinstatement to prove the averments in the petition by clear and convincing evidence. The People stipulated that Petitioner complied with all applicable disciplinary orders related to his suspension and that he is competent in his knowledge of the law. Therefore, the only issue before this Hearing Board is whether Petitioner proved by clear and convincing evidence that he has been rehabilitated and is otherwise fit to practice law as provided in C.R.C.P. 251.29(b).

■ The Colorado Supreme Court declared that in assessing rehabilitation we "must include the consideration of numerous factors bearing on the [attorney's] *state of mind and ability.*"[13] These issues include but *are not limited to:*

> ... numerous factors bearing on the Petitioner's state of *mind* and ability, such as character, conduct since the imposition of the original discipline, professional competence, candor and sincerity, recommendations of other witnesses, present business pursuits of the Petitioner, the personal and community service aspects of the Petitioner's life, and the Petitioner's recognition of the seriousness of his previous misconduct.

*People v. Klein,* 756 P.2d 1013, 1016 (Colo. 1988); *see also Goff v. People,* 35 P.3d 487 (Colo.O.P.D.J.2000); and *Lockley v. People,* 96 P.3d 236 (Colo.O.P.D.J.2004).[14]

The Hearing Board finds by clear and convincing evidence that Petitioner is now rehabilitated, has complied with all the applicable rules in the reinstatement, and therefore should be reinstated subject to the conditions set forth at the conclusion of this opinion and order.

---

12. The PDJ accepted the Affidavit of Jamey Ellerbe (Stipulated Exhibit 18) in lieu of live testimony.

13. While this case interpreted the previous rule, C.R.C.P. 241.22, it looks to the ABA factors for determining rehabilitation and provides valuable guidance in this area.

14. The PDJ cites O.P.D.J. cases only for guidance and not as precedent.

■ While the Hearing Board finds Petitioner established rehabilitation by clear and convincing evidence, the Hearing Board's primary concern is protection of the public. Therefore, the Hearing Board deems the condition that Petitioner meet with Dr. Muller one more time necessary to ensure his successful transition back into the practice of law.

The Hearing Board commends Petitioner for the zeal he demonstrated in these proceedings, and trusts he will maintain his enthusiasm and respect for the practice of law in the future. The Hearing Board also commends Petitioner for his candor concerning his prior alcohol usage. Petitioner's honesty about, and desire to overcome, these problems speak to his integrity, and the good faith he brought to these proceedings.

## V. *ORDER*

1. The Hearing Board **GRANTS** Petitioner's Verified Petition for Reinstatement. Petitioner Michael P. Fossenier, Attorney Registration Number 17804, **SHALL** be reinstated to the practice of law effective immediately. The PDJ also **TRANSFERS** Petitioner from disability inactive status to active status effective immediately.

2. Petitioner **SHALL** undergo an evaluation by Dr. Muller in April 2007. Dr. Muller shall provide a copy of his findings and recommendations to the Court and the People **on or before May 31, 2007.** The Hearing Board will consider additional conditions of reinstatement, if any, at that time.

3. Petitioner **SHALL** pay the costs of these proceedings; the People shall submit a Statement of Costs within fifteen (15) days of the date of this Order, and Petitioner may submit a response within ten (10) days thereafter.