David HOFER, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

No. 06PDJ044.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Dec. 13, 2006.

On October 10–11, 2006, a Hearing Board composed of CORINNE MARTINEZ–CASIAS, a member of the·Bar, FRANCES L. WINSTON, a member of the public, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("PDJ"), held a reinstatement hearing pursuant to C.R.C.P. 251.18 and 251.29(d). David Hofer ("Petitioner") appeared pro se and April M. Seekamp appeared on behalf of the Office of Attorney Regulation Counsel ("the People").

## OPINION AND ORDER RE: RE-INSTATEMENT PURSUANT TO C.R.C.P. 251.29

### I. *ISSUE*

An attorney seeking reinstatement under C.R.C.P. 251.29 must prove compliance with all disciplinary orders, fitness to practice, and rehabilitation by clear and convincing evidence. The People stipulated that Petitioner complied with all applicable disciplinary orders. Petitioner provided substantial evidence as to his fitness to practice and the meaningful and sustained change in his character since the time of his original suspension. Should the Hearing Board reinstate Petitioner's license to practice law?

*DECISION OF HEARING BOARD:* RE-INSTATEMENT GRANTED

### II. *PROCEDURAL HISTORY*

On January 23, 2003, the PDJ approved a Conditional Admission of Misconduct and suspended Petitioner from the practice of law for a period of one year and one day, effective February 23, 2003.[1]

Petitioner filed a "Verified Petition for Reinstatement" on June 14, 2006.[2] On July 3, 2006, the People filed an "Answer To Verified Petition For Reinstatement" and agreed that Petitioner had complied with all applica-

---

1. *See* the People's Stipulated Exhibit K.

2. Petitioner also filed an "Amended Verified Petition for Reinstatement" on June 26, 2006.

ble disciplinary orders including the payment of costs,[3] but took no position on the merits of the petition pending an investigation of the matters alleged therein.

On September 29, 2006, the parties each filed a set of stipulated exhibits. During the reinstatement hearing, the PDJ accepted and admitted Petitioner's Stipulated Exhibits 1–22 and the People's Stipulated Exhibits A–K into evidence. The PDJ also accepted and admitted Petitioner's Exhibit 23 during the hearing.

Petitioner testified on his own behalf and presented three additional witnesses, both lay and professional, in support of his petition. The People did not present any witnesses and at the close of the case agreed that Petitioner should be reinstated with certain conditions.

## III. FINDINGS OF FACT

The Hearing Board finds the following facts by clear and convincing evidence.

Petitioner has taken and subscribed the Oath of Admission, was admitted to the Bar of the State of Colorado on October 31, 1983, and is registered as an attorney upon the official records of the Colorado Supreme Court, Attorney Registration No. 13280. Petitioner is subject to the jurisdiction of the Colorado Supreme Court and the Office of the Presiding Disciplinary Judge in these proceedings.

### Petitioner's Prior Discipline

Prior to his 2003 suspension, Petitioner had received eight letters of admonition, one private censure, and one stayed suspension dating back to 1985.[4] Petitioner engaged in multiple instances of neglect and failure to communicate with his clients in these matters. Petitioner also failed to pay a bill for court reporting services, threatened to grieve another attorney in order to obtain an advantage in a civil matter, and charged an inap-

propriate flat-fee for a simple dissolution of marriage case.

On January 23, 2003, the PDJ approved a conditional admission of misconduct and suspended Petitioner from the practice of law for a period of one year and one day. The factual basis for Petitioner's 2003 suspension involved his conduct in three client matters. In the first client matter, Petitioner failed to prepare written permanent orders as ordered by a court and failed to communicate with his client. In the second and third client matters, Petitioner failed to provide services in a timely manner and failed to communicate with his clients.[5]

### Petitioner's Testimony

Petitioner testified on his own behalf and described the following background. He is a graduate of the University of Colorado School of Law who has been licensed to practice law in Colorado since October 31, 1983. Petitioner immediately entered private practice, initially out of his home and later an office, while primarily practicing family and domestic relations law. Near the time of his 2003 suspension, Petitioner decided to move to Florida due to a chronic cough. Petitioner returned to Colorado in January 2005.

Petitioner discussed the ways he maintained his professional competence since returning to Colorado in January 2005. He completed 79 credits of continuing legal education.[6] He also worked for several attorneys including Rebecca Winters, Gary Filosa, Michael Grills, and Craig Chambers on an "as-needed" contract basis. Working for these attorneys gave Petitioner the opportunity to witness how other attorneys deal with clients and deadlines. Petitioner expressed his eagerness to use the new skills he learned from these attorneys.

Petitioner also discussed in detail his previous disciplinary history and described it as "painful." He expressed remorse for letting down his former clients and acknowledged

---

**3.** See also Stipulated Facts filed September 29, 2006.

**4.** See the People's Stipulated Exhibits A through J.

**5.** See the People's Stipulated Exhibit K.

**6.** See Petitioner's Stipulated Exhibit 23.

that each instance of misconduct was preventable. Petitioner used to believe he could not make everyone happy and that it was this attitude that led to his discipline. He also attributed some of his past conduct to jumping into a busy private practice directly from law school without supervision from an experienced attorney. It took the loss of his license for Petitioner to realize its value and to understand how others relied on him as a professional to competently handle their legal matters.

Petitioner testified in detail as to his past alcohol abuse. He discussed how his failure to make any drastic changes following a DUI in 1996 ultimately resulted in a second DUI in 2003. Following his second DUI, a Florida court ordered that Petitioner abstain from alcohol for 12 months.[7] However, he returned to drinking following that 12-month period. Petitioner still considered each DUI as an "isolated incident."

Petitioner views his first meeting with Charles Hazelhurst, PhD, ABPP, a licensed clinical psychologist, as the point in time when his attitude about his alcohol abuse began to change. Shortly thereafter, Petitioner began participating in the Rational Recovery and Smart Recovery programs.[8] Both programs are Internet-based programs that provide a toolbox of techniques and skills to deal with cravings for alcohol. They also allow members to chat on-line about their experiences. Petitioner stated that he gained the skills and knowledge necessary to stop drinking in these programs and further asserted that he has not taken a drink since this time. He understands that drinking poses a great danger to his well-being.

Petitioner now recognizes that he always had a problem with alcohol that he never recognized in the past. He acknowledged that he disgraced himself, his family, and the legal community with his actions. Petitioner understands he injured people and embar-

rassed the legal profession and he is sorry for his past conduct.

Finally, Petitioner discussed the pro bono work he did for Gary Filosa in a personal injury case, the mock trial work he intends to start with local high school students, and the volunteer work he did in the wake of the Hurricane Katrina to secure formula for lactose-intolerant babies.[9] He also testified to his positive experience working for customers at a Hyundai dealership in Florida.[10]

Petitioner wants to be reinstated to the practice of law because he enjoys working with people and he enjoys challenging legal issues. He initially intends to talk to other attorneys about contract work and he eventually wants to reestablish a solo practice. Petitioner believes he will be a different attorney going forward because he understands how he minimized his alcohol issue in the past and because he intends to implement changes to his practice including a triple calendaring system and redrafted fee agreements.[11]

### Additional Testimony in Support of Petition for Reinstatement

Craig Chambers is a Colorado attorney and friend of Petitioner. He met Petitioner when they worked together on the same case in April 1997. Mr. Chambers has observed changes in Petitioner's character and practice habits since that time. Petitioner has worked 5-10 hours/week for Mr. Chambers as a paralegal since January 2005. In that time, Petitioner has helped with cases, conducted legal research, drafted motions, and provided strategic advice. Mr. Chambers believes Petitioner should be reinstated to the practice of law.

Gary Filosa is a Colorado attorney and friend of Petitioner. He met Petitioner in law school and they later shared an office. Mr. Filosa believes Petitioner "burned out" and lost an appreciation for his license to practice law. He also observed a confronta-

---

7. *See* Petitioner's Stipulated Exhibits 11 through 15.

8. *See* Petitioner's Stipulated Exhibits 7 through 10.

9. *See* Petitioner's Stipulated Exhibit 21.

10. *See* Petitioner's Stipulated Exhibit 16.

11. *See* Petitioner's Stipulated Exhibits 17 and 19-20.

tional attitude in Petitioner's character in the past that has since changed. Petitioner has worked 60–80 hours for Mr. Filosa since returning from Florida. Mr. Filosa hopes the Hearing Board reinstates Petitioner to the practice of law because he would like to refer cases to Petitioner.

Charles Hazelhurst, PhD, ABPP is the licensed clinical psychologist who evaluated Petitioner on two occasions.[12] In his report of May 16, 2005, Dr. Hazelhurst diagnosed Petitioner as someone with an alcohol problem, Alcohol Abuse (DSM IV, 305.00), and recommended that Petitioner abstain from drinking alcohol for a period of one year and participate in a program on a weekly basis.[13] Dr. Hazelhurst concluded that Petitioner's alcohol abuse likely would not directly interfere with his professional demeanor or judgment, but also noted that Petitioner did not view himself as someone with an alcohol problem.

In his report of March 31, 2006, Dr. Hazelhurst concluded that Petitioner had complied with his prior recommendations.[14] Dr. Hazelhurst "strongly" supported Petitioner's reinstatement to the practice of law, because he believes Petitioner has made a "substantial" change in his attitude and behavior regarding his use of alcohol. Petitioner acknowledged his alcohol problem and learned techniques to deal with it. On August 18, 2006, Dr. Hazelhurst recommended that Petitioner continue to abstain from alcohol and that he schedule a follow-up appointment in April 2007.[15]

## IV. LEGAL ANALYSIS AND CONCLUSIONS OF LAW

The Hearing Board must first look to the rules applicable to the reinstatement process and then to case law, particularly Colorado Supreme Court case law, which provides considerable guidance in interpreting these rules. Pursuant to C.R.C.P. 251.29(b), an attorney subject to reinstatement proceedings must prove the following by clear and convincing evidence:

1. He has been rehabilitated;

2. He has complied with all applicable disciplinary orders and with all provisions of Chapter 20 of the Colorado Rules of Civil Procedure concerning attorney discipline; and

3. He is fit to practice law.

■ C.R.C.P. 251.29(c) sets forth the formal requirements for a petition for reinstatement and C.R.C.P. 251.29(d) requires the party seeking reinstatement to prove the averments in the petition by clear and convincing evidence. The People stipulated that Petitioner complied with all applicable disciplinary orders related to his suspension. Therefore, the only issues before this Hearing Board are whether Petitioner proved by clear and convincing evidence that he has been rehabilitated and he is otherwise fit to practice law as provided in C.R.C.P. 251.29(b).

■ The Colorado Supreme Court declared that in assessing rehabilitation we "must include the consideration of numerous factors bearing on the [attorney's] *state of mind and ability.*"[16] These issues include but *are not limited to:*

> . . . numerous factors bearing on the Petitioner's state of mind and ability, such as character, conduct since the imposition of the original discipline, professional competence, candor and sincerity, recommendations of other witnesses, present business pursuits of the Petitioner, the personal and community service aspects of the Petitioner's life, and the Petitioner's recognition of the seriousness of his previous misconduct.

*People v. Klein,* 756 P.2d 1013, 1016 (Colo. 1988); *see also Goff v. People,* 35 P.3d 487 (Colo.O.P.D.J.2000); and *Lockley v. People,* 96 P.3d 236 (Colo.O.P.D.J.2004).[17]

12. *See* Petitioner's Stipulated Exhibits 3–5.

13. *See* Petitioner's Stipulated Exhibit 4.

14. *See* Petitioner's Stipulated Exhibit 5.

15. *See* Petitioner's Stipulated Exhibit 6.

16. While this case interpreted the previous rule, C.R.C.P. 241.22, it looks to the ABA factors for determining rehabilitation and provides valuable guidance in this area.

17. The PDJ cites O.P.D.J. cases only for guidance and not as precedent.

The Hearing Board finds that Petitioner experienced a sustained change in his character since the time of his original suspension. Petitioner addressed his alcohol abuse and the character issues that led to his past discipline. He was candid, sincere, and remorseful in these proceedings. The Hearing Board also finds that Petitioner maintained his professional competence during his suspension and that he has implemented adequate measures to better deal with client matters. Therefore, the Hearing Board finds clear and convincing evidence that Petitioner is now rehabilitated, has complied with all the applicable rules in the reinstatement, is otherwise fit to practice law, and should be reinstated to the practice of law.

■ The People were also satisfied with the techniques Petitioner implemented to deal with his neglectful conduct and his alcohol issues and generally supported his petition for reinstatement. However, they seek a number of conditions of reinstatement that include his continued abstinence from alcohol, random urine-analysis until February 2007, a follow-up appointment with Charles Hazelhurst, PhD, APBB in April 2007, attendance at one ethics CLE annually for each of the next three years, and a practice monitor for one year.[18] The Hearing Board also agrees that these conditions of reinstatement will help ensure Petitioner's continued success.

## V. ORDER

It is therefore ORDERED:

1. The Hearing Board **GRANTS** Petitioner's Verified Petition for Reinstatement. Petitioner David Hofer, Attorney Registration Number 13280, **SHALL** be reinstated to the practice of law effective immediately.

2. Petitioner **SHALL** continue his abstinence from alcohol.

3. Petitioner **SHALL** schedule an appointment with Dr. Hazelhurst in April

2007. Dr. Hazelhurst shall provide a copy of his findings and recommendations to the Court and the People **on or before May 31, 2007.** The Hearing Board will consider additional conditions of reinstatement, if any, at that time.

4. Petitioner **SHALL** undergo random urine-analysis at his own expense on a monthly basis until May 31, 2007. Petitioner shall provide the results to the Office of Attorney Regulation Counsel. The Hearing Board will consider extending this time based on the findings and recommendations of Dr. Hazelhurst.

5. Petitioner **SHALL** attend and successfully pass the one-half-day Trust Account School sponsored by the Office of Attorney Regulation Counsel within one year of the date of this order, and pay all costs associated therewith. Petitioner shall register for and pay the costs of Trust Account School within thirty days of the date of this order.

6. Petitioner **SHALL** attend one ethics CLE annually for each of the next three years.

7. Respondent shall abide by the practice monitor conditions outlined in Petitioner's Stipulated Exhibit 22.

8. Petitioner **SHALL** pay the costs of these proceedings; the People shall submit a Statement of Costs within fifteen (15) days of the date of this order, and Petitioner may submit a response within ten (10) days thereafter.

---

18. *See* Petitioner's Stipulated Exhibit 22 and "Stipulation to Conditions Concerning Petition-er's Alcohol Use" filed September 29, 2006.